28 A.3d 868

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Michael J. TRAVAGLIA, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 2009.

Decided Sept. 28, 2011.

486

Ned J. Nakles, Nakles & Nakles, Latrobe, Dante G. Bertani, Greensburg, for Michael J. Travaglia.

Thomas R. Grace, John W. Peck, Westmoreland County District Attorney's Office, Greensburg, Amy Zapp, PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

*OPINION*

Justice TODD.

Michael J. Travaglia appeals the sentence of death imposed by the Westmoreland County Court of Common Pleas following a penalty hearing held pursuant to a grant of federal *habeas corpus* relief. For the reasons that follow, we affirm Appellant's judgment of sentence.

In the early morning hours of January 3, 1980, Apollo Police Officer Leonard Miller was on duty when a silver-colored Lancia sports car containing three men—Appellant, John Lesko, and Richard Rutherford—sped past his position at the Apollo Stop–and–Go convenience store several times. Officer Miller radioed for assistance, then pursued and stopped the sports car. When back-up officers arrived, they found Officer Miller lying on the highway, dead from two bullets fired from a .38 caliber handgun. His service revolver had been drawn, and all six rounds had been fired. Police subsequently located the sports car, which had been abandoned. The windows were shattered and the car had bullet holes in it. It was determined that the car was registered to a William Nichols of Pittsburgh, who had recently disappeared.

Prior to Officer Miller's homicide, state police received information indicating that Appellant may have been involved in a number of armed robberies and killings in Pittsburgh and surrounding counties. Pursuant to their investigation, the state police found a vehicle owned by a homicide victim abandoned near a motel where Appellant and Daniel Keith Montgomery had been staying.

Pittsburgh police located Montgomery in the early evening hours of January 3, 1980 in the downtown area of Pittsburgh. While questioning him, they discovered a .38 caliber handgun on his person. Montgomery told police Appellant gave him the weapon and that Appellant and Lesko had at that time talked about killing a police officer. Montgomery then told police that Appellant and Lesko were staying in a room at the

Edison Hotel in downtown Pittsburgh. The police proceeded immediately to the Edison Hotel, where they arrested Appellant and Lesko. After having been given their Miranda warnings, the men were individually interrogated. Both gave statements implicating themselves in the killing of Officer Miller, as well as in the killings of William Nichols, Peter Levato, and Marlene Sue Newcomer.[1]

Following various delays caused by two changes of venue and a mistrial, a joint trial of Appellant and Lesko for the murder of Officer Miller commenced in Westmoreland County on January 21, 1981, before Westmoreland County Common Pleas Court Judge Gilfert Mihalich and a jury that had been selected in Berks County. On January 30, 1981, the jury convicted both men of first-degree murder and conspiracy for the killing of Officer Miller, and, on February 3, 1981, both men were sentenced to death. On direct appeal, this Court affirmed the convictions. *See Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984). Subsequently, Appellant filed a petition for relief under the Post Conviction Hearing Act ("PCHA"), 42 Pa.C.S.A. §§ 9541 *et seq.,*[2] which the PCHA court denied on October 4, 1985. The PCHA court's order was affirmed on appeal. *See Commonwealth v. Travaglia,* 359 Pa.Super. 630, 515 A.2d 620 (1986), *appeal denied,* 518 Pa. 639, 542 A.2d 1368 (1987), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989).

1. Appellant admitted that, in January 1980, he, Lesko, and Rutherford kidnapped William Nichols and stole Nichols' vehicle. While in the vehicle, Nichols was beaten and shot in the arm by Appellant. When Nichols lost consciousness, he was gagged with a scarf and taken to a lake, where his hands and feet were bound. Appellant and Lesko then rolled Nichols into the water, where he died. Appellant also admitted that, in late December 1979, he and Lesko kidnapped Peter Levato and stole his vehicle. Appellant and Lesko drove Levato to a remote area, where they threw him from a bridge. When Levato did not die as a result of the fall, Appellant and Lesko searched for him and fatally shot him. Finally, Appellant admitted that, after he and Lesko were picked up by a vehicle driven by Marlene Newcomer on January 1, 1980, they used Newcomer's vehicle to commit a robbery, and then shot Newcomer and left her body in her vehicle in a parking garage.

2. The PCHA was repealed in part, modified in part, and renamed the Post Conviction Relief Act ("PCRA"), effective April 13, 1988.

On June 8, 1990, Governor Robert Casey signed a warrant for the execution of Appellant; on September 9, 1990, however, a stay of execution was issued to allow Appellant to file a petition for *habeas corpus*. Appellant filed another petition for collateral relief, this time under the PCRA, 42 Pa.C.S.A. §§ 9541–9546, the successor to the PCHA. Appellant's PCRA petition was denied, and, on appeal, this Court affirmed Appellant's sentence of death. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).

On May 21, 1996, Appellant filed a petition for writ of *habeas corpus* in federal court, and the district court issued the writ and ordered a new sentencing hearing on the basis that evidence of Appellant's guilty plea to the Nichols murder should have been excluded at trial pursuant to a plea agreement. Thereafter, Appellant filed an omnibus pre-trial motion seeking to bar resentencing pursuant to *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1997). The trial court denied the motion, but granted Appellant the right to file an immediate appeal. On December 15, 1998, the Superior Court affirmed the trial court's order. *Commonwealth v. Travaglia*, 723 A.2d 190 (Pa.Super.1998), *appeal denied*, 559 Pa. 704, 740 A.2d 232 (1999), *cert. denied*, 529 U.S. 1026, 120 S.Ct. 1436, 146 L.Ed.2d 325 (2000).

Prior to the resentencing hearing scheduled for October 16, 2000, the Commonwealth filed a motion *in limine* seeking a ruling that it would be permitted to introduce evidence of Appellant's previous homicide convictions in rebuttal to Appellant's character evidence. The trial court denied the motion, ruling that evidence of the previous homicides could not be used unless Appellant "opened the door." In this regard, the trial court ruled that evidence presented by the defense relating to Appellant's good behavior in prison, and character evidence relating to periods of time which did not encompass the homicides, did not constitute "opening the door." On October 13, 2000, the Commonwealth filed a notice of appeal, and the Superior Court reversed the trial court's order, hold-

ing the trial court erred in precluding the Commonwealth from introducing evidence of Appellant's prior convictions, for purposes of rebuttal, after Appellant introduced evidence of his good prison record and his change in personality while in prison, including becoming religious. *Commonwealth v. Travaglia,* 792 A.2d 1261, 1264 (Pa.Super.2002), *appeal denied,* 572 Pa. 733, 815 A.2d 633 (2002) (table), *cert. denied,* 540 U.S. 828, 124 S.Ct. 55, 157 L.Ed.2d 52 (2003).

Appellant's second penalty hearing began on July 5, 2005, and concluded on July 26, 2005. On July 26, 2005, the jury returned a sentence of death, finding the one aggravating circumstance—that the victim was a police officer killed in the performance of his duty, 42 Pa.C.S.A. § 9711(d)(1)—outweighed the two mitigating circumstances established by Appellant under the catchall provision of Section 9711(e)(8) [3]— that he had lived as a well-adjusted inmate in prison, and that he had changed his life and adopted a Christian lifestyle. Following the denial of his post-sentence motions, Appellant filed the instant appeal, wherein he raises 18 issues regarding his penalty hearing, which we have reordered for ease of discussion.

## A. Challenges to Evidentiary Rulings

Appellant raises several claims relating to the trial court's evidentiary rulings at his penalty hearing. Preliminarily, we note that the admissibility of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon abuse of that discretion. *Commonwealth v. Laird,* 605 Pa. 137, 168, 988 A.2d 618, 636 (2010). An abuse of discretion will not be found "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (citation omitted). Moreover, "an erroneous ruling by a trial court on an evidentiary issue does not necessitate relief where the

3. Pursuant to Section 9711(e)(8), mitigating circumstances shall include "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.C.S.A. § 9711(e)(8).

error was harmless beyond a reasonable doubt." *Id.* (citation omitted).

### 1. *Trial Court's Exclusion of Kenneth Miller's Testimony*

Appellant first argues that the trial court erred in excluding the testimony of Kenneth Miller, the Death Penalty Unit Manager at the prison where Appellant is incarcerated, regarding Appellant's future ability to adjust to the conditions of the general population. *See* Appellant's Brief[4] at 13 (Argument I). Mr. Miller testified at length regarding his knowledge of Appellant and Appellant's discipline record and work history, but when asked whether he believed Appellant would be able to function successfully in the general population if sentenced to life imprisonment, the Commonwealth objected, and the trial court sustained the objection on the basis that the evidence was speculative. When counsel attempted to lay a further foundation, the Commonwealth objected on the basis that the evidence was not relevant, and the trial court sustained that objection. Appellant contends the trial court erred in this regard, arguing that, under *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), the issue of a defendant's future adaptability in prison is a potential mitigating circumstance that may be presented to a penalty phase jury. Appellant further alleges that the prosecutor exploited the absence of Mr. Miller's testimony by arguing to the jury in his closing argument:

> We have shown you two aggravating circumstances. We've proven them beyond a reasonable doubt. But it doesn't end there. We've given you a picture of the defendant, Michael J. Travaglia, and the kind of person he is. He's cruel. He's brutal. He's heartless. He's a predator. And none of us know what's going to happen to him or how he will behave in the future.

N.T. Trial, 7/5/05–7/26/05, at 1105.

Although at trial the court indicated it would not allow Mr. Miller to offer an opinion as to whether he personally believed

---

4. Appellant's brief to this Court is actually titled "Brief in Support of Post–Trial Motions"; however, we will refer to it as "Appellant's Brief."

Appellant would adjust well to prison life in the general population because such testimony was both speculative and irrelevant, the trial court, in its subsequent opinion, explained:

> Pennsylvania Rule of Evidence 602 states that "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." It is not possible for an individual to have personal knowledge of how someone will behave in the future. Any testimony as to how the Defendant would behave in the future would be speculative, thus this Court properly excluded the testimony.

Trial Court Opinion, 10/11/07, at 6. The trial court further noted that the Supreme Court's ruling in *Skipper* concerned "testimony regarding present and past adjustment to prison life not future adjustment. The issue in this case is future adjustment." *Id.* at 7. Finally, the trial court noted:

> Defense counsel in his closing argument referred to Kenneth Miller's testimony and argued that "there hasn't been any problem with Mike Travaglia in prison nor is there any evidence that should cause you to believe there will be a problem if you allow him to finish his life in prison." He argued that the Defendant's past behavior in prison was indicative of his future behavior if given a life sentence. . . . Whether or not the Defendant would adjust to life in prison if given a life sentence was properly left to the jury. . . . The jury was also instructed that the Defendant's adjustment to life in prison was presented as a mitigating factor and that if they found it to be a mitigating factor[,] it was to be balanced against any aggravating factors, if any, they found.

*Id.* at 7–8 (citations to trial transcript omitted).

As noted above, in support of his argument, Appellant relies on the United States Supreme Court's decision in *Skipper*. In *Skipper*, the petitioner sought to introduce at his capital sentencing trial the testimony of two jailers and one regular visitor, who would have testified that petitioner had "made a good adjustment" during the seven months he had been in prison awaiting trial. The trial court, however, held that such evidence was irrelevant and inadmissible because whether

petitioner could adjust to life in prison, if spared the death penalty, was not an issue in the case. On appeal, the United States Supreme Court reversed, noting, *inter alia,* that evidence of a defendant's past conduct in prison may be "indicative of his probable future behavior." 476 U.S. at 5, 106 S.Ct. 1669. The Court further opined "a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by nature relevant to the sentencing determination." *Id.* at 7, 106 S.Ct. 1669. The Court concluded a defendant cannot be precluded "from introducing otherwise admissible evidence for the explicit purpose of convincing the jury that he should be spared the death penalty because he would pose no undue danger to his jailers or fellow prisoners and could lead a useful life behind bars if sentenced to life imprisonment." *Id.*

▆▆▆ The trial court's finding in the instant case that evidence of Appellant's ability to make a favorable adjustment to life in prison was not relevant as a mitigating factor clearly is inconsistent with the Supreme Court's pronouncement in *Skipper.* However, as this Court previously explained in our decision affirming the denial of Appellant's second petition for post-conviction relief, "neither *Skipper* nor Pennsylvania's sentencing scheme suspends the rules and law of evidence; the proffered evidence must be competent, or it may not be presented to the jury." *Travaglia,* 541 Pa. at 133, 661 A.2d at 364; *Skipper,* 476 U.S. at 7, 106 S.Ct. 1669 (prison adjustment evidence must be "otherwise admissible"). In the instant case, the trial court determined that Mr. Miller's testimony as to his personal opinion regarding how Appellant would adjust to prison life if placed in the general population was speculative under Rule 602 of the Pennsylvania Rules of Evidence, and, therefore, inadmissible. Appellant does not challenge the trial court's determination that Mr. Miller's testimony was speculative, and, indeed, a review of the record reveals that Mr. Miller testified as a fact witness, not an expert. Thus, any error by the trial court in concluding that Mr. Miller's testimony was not relevant was harmless, as the trial court properly excluded Mr. Miller's personal opinion testimony

under Rule 602. Accordingly, we reject Appellant's first claim.

## 2. *Trial Court's Exclusion of Other Mitigation Evidence*

Appellant additionally asserts the trial court erred in prohibiting him from introducing the following mitigation evidence related to his good character:

1. Evidence from Reverend Kathy Kay Higgins, Prison Chaplain, concerning her professional opinion as to the sincerity of [Appellant's] Christian faith;

2. Evidence from [the] Department of Corrections counselor, Rocky Farmartino, concerning his opinion about the sincerity of [Appellant's] beliefs and remorse for the crimes he committed; and

3. [Testimony from Appellant's] prior attorney, Joseph Luciano [sic], ... concerning the positive attributes of [Appellant's] attitude and his ability to cooperate with his counsel as compared to those of other inmates that the attorney had represented.

*See* Appellant's Brief at 32–33 (Argument IV). Appellant claims the testimony of these three individuals was crucial because they are part of the small group who know him, and their testimony regarding the sincerity of his beliefs was important to Appellant's rebuttal of the arguments made by the Commonwealth in its closing argument. Appellant's Brief at 34.

■ While, as we recognized in *Commonwealth v. Lesko*, "a defendant is to be accorded wide latitude in demonstrating mitigating circumstances," 553 Pa. at 246, 719 A.2d at 223 (1998),[5] the record belies Appellant's claim that the trial court denied him the opportunity to present crucial evidence relating to mitigating circumstances. As the trial court explained:

Joseph Lucciano the Defendant's former attorney testified as to his interaction with the Defendant. **Lucciano provid-**

5. Our decision in *Commonwealth v. Lesko* involved this Court's review and affirmance of John Lesko's 1995 death sentence, which was imposed after Lesko's original death sentence was vacated by the United States Court of Appeals for the Third Circuit in *Lesko v. Lehman, supra.*

ed testimony that the Defendant was appreciative of the work he had done for him on the case and was cooperative when asked for information. Lucciano also served as the best man at the Defendant's wedding and spoke to his observations of the Defendant prior to and after the wedding. He explained that he had been informed that the Defendant had become a Christian. He observed after the Defendant's wedding that the Defendant no longer used rough language. The Defendant explained that his wife had indicated that the use of rough language was not consistent with genuine faith. Lucciano also testified that the Defendant expressed that he was sorry for the crimes he had committed and that "he was very sorry for the pain that he had caused to the families, he was genuinely sorry for all the things that he had been involved with . . ."

Lucciano was precluded from testifying to how seriously he had contemplated being the best man in the Defendant's wedding. He was further precluded from comparing his relationship with the Defendant to his relationship with other prisoners. The testimony was precluded for lack of relevance. "Evidence which tends to establish some fact material to the case, or which tends to make a fact at issue more or less probable, is relevant." The precluded testimony does not make the Defendant's contention that he had conformed and become a Christian more or less likely. Thus the testimony was properly excluded.

Rocky Farmartino was a Corrections Counselor II who was assigned to work with the Defendant. Mr. Farmartino was permitted to read from his report about discussions he had with the Defendant in which the Defendant claimed he had converted to Christianity. Farmartino testified that as a result of his meetings with the Defendant he recommended in a commutation summary that the Governor show mercy. Farmartino was prohibited from testifying as to his opinion of the sincerity of the Defendant's beliefs. This Court ruled that Farmartino's personal opinion as to whether or not the Defendant was sincere in his religious beliefs was irrelevant. Farmartino's opinion in that regard does not make the Defendant's contention that he had become a

Christian more or less likely. While the specific opinion of the witness was not allowed in testimony, **the witness' opinion was admitted by way of Defense Exhibit R, in which Farmartino stated that "In the opinion of this counselor, Mr. Travaglia seems quite sincere with regards to his expressed beliefs. He seems to be remorseful with regards to his crimes ..."** There is no evidence that the Court precluded this witness from providing relevant mitigating evidence.

Reverend Kathy Higgins is a Chaplain at the state correctional facility where the Defendant is housed. The Defendant's specific objection is that Reverend Higgins was not permitted to provide her professional opinion as to the sincerity of the Defendant's Christian faith. However, **Reverend Higgins was permitted to read from a letter she wrote, on the Defendant's behalf, for admission into an external Christian congregation. She described her interactions with the Defendant and stated that she believed what she wrote in the letter to be true. In the letter she stated "I do believe that Michael is genuinely seeking after Jesus Christ."** This statement is an opinion of her belief that the Defendant was sincere about his faith and the Court notes that the letter was admitted into evidence as Defense Exhibit Z.

The defense witnesses were permitted to provide mitigating evidence as to the Defendant's character. The Jury, after instructions on how to determine what was mitigating evidence and how to use that evidence in their decision as to sentencing, found two mitigating factors. The first being that the Defendant had lived as a well adjusted inmate in prison and the second being that the Defendant had changed his life and adopted a Christian lifestyle. There is no evidence that the court precluded these witnesses from providing relevant mitigating evidence thus the Defendant's argument lacks merit.

Trial Court Opinion, 10/11/07, at 13–15 (case citations and citations to transcript omitted, emphasis added).

Although Appellant contends the three witnesses "could have added so much more to the evidence of mitigation had

they been permitted to testify," Appellant's Brief at 35, it is clear that the evidence of mitigating circumstances Appellant sought to have admitted was, in fact, admitted by the trial court, albeit through different means than Appellant desired. Accordingly, Appellant is not entitled to relief on this claim.

### 3. *Superior Court's Ruling that Evidence of Positive Prison Adjustment is Rebuttable*

■ Appellant next argues that, on the Commonwealth's appeal of the trial court's denial of its motion *in limine,* the Superior Court erred in holding that, in capital penalty hearings, evidence of positive prison adjustment may be rebutted by otherwise inadmissible evidence of crimes that were committed before a defendant was incarcerated. *See* Appellant's Brief at 19 (Argument II) (citing *Commonwealth v. Travaglia,* 792 A.2d at 1264).[6] In so arguing, Appellant contends that evidence of positive prison adjustment is not character evidence, as it does not suggest that a defendant "is a good person, but that, as a sentencing factor, he can be a good prisoner." Appellant's Brief at 20. Thus, according to Appellant, the Commonwealth should have been precluded from introducing evidence of the Levato and Newcomer homicides to rebut evidence of his positive prison adjustment.[7]

Appellant further argues that, to the extent evidence of his good behavior in prison is considered character evidence, it

---

**6.** Although Appellant concedes he raised this issue in his petition for allowance of appeal from the Superior Court's decision, and this Court denied Appellant's petition, *see Commonwealth v. Travaglia,* 572 Pa. 733, 815 A.2d 633 (2002) (table), we have explained that "a decision declining to review the decision of an intermediate appellate court cannot be equated with a decision on the merits." *Commonwealth v. Boczkowski,* 577 Pa. 421, 441, n. 16, 846 A.2d 75, 86 n. 16 (2004) (rejecting contention that law of the case doctrine barred review of post-sentence claim which had been reviewed by the Superior Court on pre-trial interlocutory appeal). As this Court is obliged to consider the merits of properly preserved and presented claims in cases arising on our capital appeal docket, as opposed to those in which we have granted discretionary review, our prior denial of Appellant's petition for allowance of appeal neither precludes, nor obviates the necessity of, this Court's present review of the merits of Appellant's claim. *See id.*

**7.** Although Appellant does not specifically identify this evidence of "positive prison adjustment," we presume he is referring, at least in part, to the testimony of Kenneth Miller, discussed *supra.*

pertains only to evidence of his character in prison, and should not be subject to rebuttal through evidence of crimes committed outside of or prior to his incarceration. In this regard, Appellant maintains, "the evidence appropriate to rebut 'good' prison behavior is 'bad' prison behavior, not behavior external to the prison setting." Appellant's Brief at 22 (citing *Skipper, supra* ).

■ It is clear that a defendant may present any admissible evidence relevant to any mitigating circumstance, including any evidence regarding the character and record of the defendant. 42 Pa.C.S.A. § 9711(a)(2) and (e)(8); *Skipper, supra.* However, "it is equally clear that the defendant is not entitled to present, without challenge or rebuttal by the Commonwealth, false or misleading evidence or to create a false impression of his character or record." *Commonwealth v. O'Shea,* 523 Pa. 384, 404, 567 A.2d 1023, 1032 (1989).

■ Furthermore, contrary to Appellant's contentions, this Court considers evidence of a defendant's good behavior in prison, at least when presented along with other more traditional character evidence, to be character evidence subject to rebuttal by the Commonwealth. For example, in *Commonwealth v. Fisher,* we rejected the appellant's argument that the trial court erroneously allowed the Commonwealth to question him regarding the meaning of a tattoo of the word "Kuda" [8] he had on his arm, reasoning:

At the penalty phase hearing, Appellant presented the testimony of his Corrections Counselor Bradley Newman as to Appellant's reputation for being kind, courteous and relating well with others while imprisoned. Appellant's defense counsel characterized Appellant as a war hero (since Appellant received a Purple Heart in Vietnam) and a model prisoner. Appellant presented evidence that he was devoutly religious. By presenting this evidence as to his good character, Appellant put his character at issue. Hav-

8. The appellant testified that "Kuda" was short for barracuda, and was a nickname that he had received as a teenager. The prosecutor averred the appellant had the term tattooed on his arm because a barracuda was a "predatory fish" and a "nasty evil fish."

ing done so, the prosecution was entitled to cross-examine Appellant regarding his tattoo in order to rebut the inference of good character.

559 Pa. 558, 579, 741 A.2d 1234, 1245 (2000).

■ As noted above, Appellant introduced the testimony of Kenneth Miller, who testified extensively, and favorably, regarding Appellant's discipline record and work history while Appellant was in prison. However, this testimony comprised only a portion of the character evidence introduced by Appellant. Indeed, as the Commonwealth· points out in its brief, Appellant presented the testimony of approximately 20 witnesses who testified to Appellant's character, including that, as a student, Appellant was well-behaved, respectful, disciplined, and well-liked; that Appellant had become addicted to drugs prior to the occurrence of the crimes; and that, since his imprisonment, Appellant has found religion and become a "new man." Although Appellant attempts to isolate the testimony regarding his good behavior in prison from the remainder of his character evidence, such evidence of good behavior was not presented in a vacuum, and the prosecution was entitled to rebut Appellant's portfolio of character evidence with evidence of behavior that occurred prior to Appellant's incarceration. *See* 42 Pa.C.S.A. § 5918(1) (defendant may be cross-examined regarding prior crimes if he introduces evidence in support of his own good character or reputation). Accordingly, we hold that Appellant is not entitled to relief.

### 4. *Evidence of Appellant's Guilty Plea to the Nichols Homicide*

■ Appellant next contends that the trial court erred in denying his motion for a mistrial when, after being warned by the trial court against attempting to introduce evidence of Appellant's guilty plea to the Nichols homicide in Indiana County, the prosecutor twice mentioned the same. *See* Appellant's Brief at 24 (Argument III). A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial. *Laird,* 605 Pa. at 170, 988 A.2d at 638. We review the denial of a mistrial under the abuse of discretion standard. *Id.*

The basis of Appellant's claim is the November 7, 1996 order by the Honorable Alan N. Bloch of the United States District Court for the Western District, which was issued at the conclusion of the hearing on Appellant's *habeas* petition:

IT IS ORDERED that the petition for writ of habeas corpus filed by Michael Travaglia is granted and that he is to be discharged from custody unless, within one-hundred twenty days, the County of Westmoreland holds a resentencing hearing at which evidence of his Indiana County guilty plea is excluded.

Order, Civil Action No. 90–1469, 11/7/96, at 1.

The impact of the above order was the subject of sidebar discussion at Appellant's sentencing hearing. The trial court determined that the order precluded evidence of Appellant's guilty plea to the Nichols homicide, but not evidence of the facts and circumstances surrounding the homicide. N.T. Trial, 7/5/05–7/26/05, at 527. Subsequently, however, the prosecutor argued that evidence of Appellant's guilty plea to the Nichols homicide was precluded only if introduced as an aggravating circumstance. *Id.* at 532. The trial court disagreed, and instructed the prosecutor not to mention Appellant's guilty plea. *Id.* at 540–41.

Thereafter, on two occasions, the prosecutor asked two of Appellant's character witnesses, Ruth Ellis Gamble and Ruth Miller, whether they knew that Appellant had been convicted in Indiana County for the murder of William Nichols. On both occasions, trial counsel objected and requested a mistrial, but the trial court denied the request. In its opinion and order, the trial court acknowledged there was some confusion and/or disagreement regarding the impact of the federal court order, but concluded, after reviewing the order, that it properly denied Appellant's motions for a mistrial:

The first page of the Federal Court Recommendation [9] indicates that at the new sentencing trial that evidence of

9. It appears the trial court is referring to the Report and Recommendation by Magistrate Judge Robert C. Mitchell, which was adopted by Judge Bloch as the opinion in support of his November 7, 1996 order.

the Defendant's guilty plea in reference to the [Nichols'] homicide is to be excluded.... This would appear to support the Defendant's argument that there was to be no mention of said plea. However, the Defendant sought relief from the Federal Court because at his original sentencing his plea to the [Nichols'] homicide was used as an aggravating factor in violation of an agreement that if he pled guilty to [Nichols'] homicide, the plea could not be used as an aggravating circumstance in the present case. Thus, it was because the guilty plea in reference to the [Nichols'] homicide was presented as an aggravating factor the Federal Court granted the Defendant relief by vacating the original sentence and ordering a new sentencing trial.

Trial Court Opinion, 10/11/07, at 8–9. The trial court acknowledged that the federal order did not address specifically the issue of whether the Commonwealth could question Appellant's character references regarding their knowledge of Appellant's guilty plea, but noted that the Superior Court previously ruled the Commonwealth was entitled to present evidence of Appellant's prior convictions, including his guilty pleas, if Appellant presented testimony in support of his good character. *Id.* at 10 (citing *Commonwealth v. Travaglia,* 792 A.2d 1261 (Pa.Super.2002)). Appellant, conversely, asserts that the language of the federal order is broad, and, as a result, does not link exclusion of evidence of his guilty plea to the Nichols homicide solely to the Commonwealth's attempt to prove aggravating circumstances.

Although the federal court order does not, on its face, link the preclusion of evidence of Appellant's guilty plea to the Nichols homicide to an attempt by the Commonwealth to establish aggravating factors, the Report and Recommendation by Magistrate Judge Robert C. Mitchell, which was adopted by Judge Bloch as the opinion in support of his November 7, 1996 order, suggests otherwise. The Report and Recommendation specifically indicates that the understanding between the parties, including the prosecutor and the Indiana County Court of Common Pleas trial judge, was that "until sentence was imposed the conviction was not final and could

not be introduced **as an aggravating factor** in the Westmoreland County proceedings." Report and Recommendation, 10/7/96, at 15 n. 7 (emphasis added). As a result, we decline to hold that the trial court, in ruling on the mistrial motion, erred in concluding that the federal order precluded evidence of Appellant's guilty plea to the Nichols homicide only where such evidence was introduced to prove aggravating circumstances.

▮▮▮▮▮▮ Thus, while, in raising the Nichols plea, the Commonwealth seemingly violated the trial court's earlier ruling precluding it from doing just that, we conclude the trial court did not err in denying a mistrial on that basis. That is, we agree the evidence introduced at trial did not run afoul of the federal court order. Moreover, when the defense presents evidence of a defendant's reputation for peacefulness, the prosecution "is permitted to test that testimony by inquiry into whether the witness is aware of convictions which tend to refute that reputation." *See Commonwealth v. Albrecht*, 554 Pa. 31, 48 n. 10, 720 A.2d 693, 702 n. 10 (1998). As evidence of Appellant's guilty plea to the Nichols homicide was introduced to test the character witnesses' awareness of Appellant's criminal background, we find no error by the trial court on that basis.

### 5. Admission of Evidence of the Circumstances Surrounding the Nichols Homicide

Appellant next argues that the trial court erred in allowing the Commonwealth to introduce evidence relating to the circumstances surrounding the Nichols homicide (as compared to evidence of Appellant's guilty plea to that homicide, discussed *supra*) at the sentencing hearing, because such evidence had no probative value and was overwhelmingly prejudicial. *See* Appellant's Brief at 46 (Argument XI). With respect to the Commonwealth's reliance on prior decisions in this case wherein evidence of the Nichols homicide was deemed admissible to prove Appellant's motive and intent in the murder of

Officer Miller,[10] Appellant responds—incorrectly—that those decisions involved guilt-phase proceedings, whereas the instant proceeding was a penalty-phase hearing. Appellant contends that, in the instant case, the jury already had determined the degree of guilt, and, therefore, motive and intent were no longer at issue. Appellant further argues the only relevant aggravating circumstance at issue during the sentencing proceeding was whether Officer Miller was a police officer killed in the line of duty, and, because the defense did not contest this fact, there was no probative value in introducing evidence of the Nichols homicide. Finally, Appellant asserts that evidence of the Nichols homicide created in the jury a hostility against Appellant, and that any cautionary instruction limiting the use of the evidence was insufficient to cure the error.

This Court addressed the same issue raised by Appellant herein in *Commonwealth v. Lesko, supra,* which involved the appeal by Appellant's co-defendant, Lesko, of his death penalty verdict. Recognizing the district court had similarly ruled that Lesko's guilty plea in the Nichols case should not be introduced at Lesko's second penalty trial, we considered whether it was error to introduce evidence of the circumstances of the Nichols homicide in order to prove Lesko's intent and motive in killing Officer Miller. We reviewed the following jury charge given by the trial court:

You have heard evidence concerning the killing of William Nichols in Indiana County. This evidence may be considered only as evidence tending to show the motive for and the circumstances surrounding the killing of Officer Leonard Miller. This event is not to be considered by you as an aggravating circumstance upon which you might base a sentence of death. That is, that the killing of William Nichols is not to be considered as an aggravating circumstance, not as a conviction to determine if Mr. Lesko has a significant history of felony convictions involving the use or

10. Specifically, the Commonwealth cites *Travaglia,* 723 A.2d 190; *Lesko,* 719 A.2d 217; *Lesko v. Lehman, supra;* and *Lesko v. Owens,* 881 F.2d 44 (3d Cir.1989). *See* Commonwealth's Brief at 47–48.

threat of violence toward a person or persons, nor as a conviction of any state offense committed either before or at the time of the offense at issue for which a sentence of life imprisonment or death was imposable. I want it to be clear to you that you are not to use the evidence of the Nichols killing to determine any of the aggravating circumstances described to you.

553 Pa. at 252, 719 A.2d at 226. Noting that the circumstances surrounding a killing are admissible for the jury to consider in imposing sentence, we concluded, "[b]ecause the jury was clearly instructed that the Nichols matter was introduced into evidence only for the purpose of showing the motive and circumstances surrounding the killing of Officer Miller, it was not error to admit evidence of the Nichols evidence for the narrow purpose which was instructed." *Id.* at 253, 719 A.2d at 226.

 In the instant case, the record reveals that a similar jury instruction was given by the trial court:

You've heard evidence concerning the murder of William Nichols. This evidence may not be used as an aggravating circumstance. The purpose for which you may consider this evidence is as proof of motive, intent or absence of accident in the killing of Officer Miller or to rebut evidence of good character offered on behalf of the defendant.

N.T. Trial, 7/5/05–7/26/05, at 1167.[11] Consistent with our determination that evidence of the circumstances surrounding the Nichols homicide was admissible in Lesko's penalty phase proceeding to establish motive, intent, or absence of mistake, we reject Appellant's claim that the trial court erred in allowing the prosecution to introduce evidence of the Nichols homicide at his penalty hearing. Moreover, although Appellant suggests the trial court's cautionary instruction in the instant case could not have alleviated the possibility of prejudice in the minds of the jury, we disagree. The trial court's

11. As noted above, once Appellant introduced evidence of his good character in support of mitigating circumstances, the prosecution was entitled to introduce evidence of other homicides to rebut such character evidence.

instructions clearly directed the jury that it could not consider evidence of the murder of William Nichols as an aggravating circumstance, and it is well established that a jury is presumed to follow a court's instructions. *Commonwealth v. Smith*, 606 Pa. 127, 132, 995 A.2d 1143, 1163 (2010). Accordingly, Appellant is not entitled to relief on this claim.

### 6. *Admission of Evidence of the Levato and Newcomer Homicides*

Appellant next argues the trial court erred in allowing the Commonwealth to introduce testimony "concerning the graphic details of the Levato and Newcomer homicides in violation of its pretrial ruling." *See* Appellant's Brief at 35 (Argument V). In recognition of the Commonwealth's agreement not to use evidence of those murders as aggravating circumstances in the instant case, the trial court ruled the Commonwealth was entitled to present evidence of Appellant's prior convictions only to suggest "other or additional motives for his good prison record and to rebut his non-violent character testimony." N.T. Trial, 7/5/05–7/26/05, at 414. Appellant claims that, over defense counsel's objection and in contravention of the trial court's ruling "specifically limiting the Commonwealth to the introduction of conviction, the name of the victim and the date of the offense," Appellant's Brief at 35, the Commonwealth

> introduced the fact that three gunshot wounds to the head with a .22 caliber gun had caused the death [of Mr. Levato] and that Mr. Levato was found against a tree in a wooded area. In the Newcomer homicide, information was improperly educed that a .22 caliber gun was used and the location of the homicide.

*Id.* at 36.

A review of the trial transcript reveals that, at least initially, the trial court instructed the prosecution that it could introduce evidence as to the date of the conviction, the date of the crime, and the name of the victim, but not additional facts or circumstances that would essentially create an aggravating circumstance. N.T. Trial, 7/5/05–7/26/05, at 415. The trial

court specifically stated that the prosecution could not introduce evidence as to the manner of death. *Id.* at 421. Subsequent to this ruling, however, Trooper Richard E. Dickey, II, who was an investigating officer with regard to the Newcomer and Levato homicides, and who filed the criminal complaint against Appellant, took the stand. The prosecutor provided Trooper Dickey with copies of the criminal complaint; the criminal information; and the sentencing order, and requested the documents be admitted into evidence; defense counsel did not object. *Id.* at 1015. The following exchange between the prosecutor and Trooper Dickey then occurred:

Q. Regarding Peter Levato, you were one of the investigators in that case?

A. Yes, sir.

Q. What was the cause of his death?

A. Three gunshot wounds. Two to the head and one to the chest area I believe.

Q. And when was the homicide?

A. That occurred sometime between December 27th to December 29th.

Q. What year?

A. Of 1979.

Q. And does the Information that was filed, does it indicate the weapon that was used?

A. Yes, it does.

Q. What is that?

A. It's a .22 caliber gun.

Q. And he pled guilty to third degree murder and criminal conspiracy to commit murder?

A. Yes.

Q. Where did the murder occur? Well, let me ask you this. Where was Mr. Levato's body found?

A. It was found up against a tree in a wooded area along side Loyalhanna Creek just north of the crest of the

Loyalhanna Dam in Loyalhanna Township, Westmoreland County.

*Id.* at 1016–17.

A few moments after this exchange, defense counsel requested a sidebar and lodged an objection with respect to Trooper Dickey's testimony as to the type of gun used, and the number and location of gunshots to the victim. The trial court noted, but overruled, the objection, concluding the trooper could testify to whatever details were contained in the criminal complaint or criminal information. Trooper Dickey then proceeded to testify that, according to the criminal information, Marlene Newcomer was killed along U.S. Route 22 with a .22 caliber gun. *Id.* at 1020. No additional objection was lodged by defense counsel following this testimony.

Although Appellant is correct in his argument that the trial court ultimately allowed the Commonwealth to introduce evidence that exceeded the scope of its pre-trial ruling, essentially overruling *sub silentio* its prior holding, Appellant fails to establish that he is entitled to relief on this basis. As the testimony quoted above reveals, the trial court determined that it would allow the prosecution to introduce evidence which was contained in the criminal complaint and/or criminal information, and Appellant does not explain *why* this was improper. Indeed, as previously stated, once Appellant introduced evidence of his good character in support of mitigating circumstances, the prosecution was entitled to introduce evidence of the other homicides to rebut such character evidence.

Moreover, we do not agree with Appellant's characterization of the evidence as "graphic," and note that the trial court specifically instructed the jury as follows:

Now, you heard evidence that Michael Travaglia pled guilty and was convicted of third degree murder and criminal conspiracy in the deaths of Peter Levato and Marlene Newcomer. By express agreement of the Commonwealth and the defense at the time of those convictions, the evidence of those convictions would not be used as an aggravating circumstance or circumstances. The sole purpose for

which you may consider the evidence of these convictions is to rebut evidence of good character offered on behalf of the defendant.

N.T. Trial, 7/5/05–7/26/05, at 1166–67. We reiterate that a jury is presumed to follow a trial court's instructions, *see Smith, supra,* and Appellant has failed to establish that it failed to do so in this case. Accordingly, he is not entitled to relief.

7. *Failure to Exclude Evidence of the Nichols, Levato, and Newcomer Homicides under Commonwealth v. Beasley*

As an additional basis for his contention that the trial court erred in failing to exclude evidence of the Nichols, Levato, and Newcomer homicides, Appellant relies on this Court's decision in *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984). *See* Appellant's Brief at 45 (Argument X). In *Beasley,* the appellant alleged trial court error in allowing the Commonwealth to introduce evidence at his penalty phase proceeding that the appellant had been convicted and sentenced to death for the first-degree murder of a police officer three months earlier. According to the appellant, the prosecution should have been limited to establishing only the fact that appellant was convicted of previous murders, without elaboration as to the facts and circumstances, or the penalties imposed. In rejecting the appellant's argument, this Court explained:

Inasmuch as 42 Pa.C.S.A. § 9711(d) begins with the preface, "Aggravating circumstances shall be limited to the following ...", it is clear that the legislature did not intend consideration by the jury of matters extraneous to the enumerated aggravating circumstances. The relevant provision, (d)(9), focuses upon past "convictions" as being an aggravating circumstance. We do not believe the legislative reference to "convictions" is so narrow in scope as to render extraneous all of the facts and circumstances of the convictions, or the sentences imposed.

In this Commonwealth, sentencing has long been regarded as having at its core a function of character analysis. *See Commonwealth v. Bell,* [417 Pa. 291, 208 A.2d 465

(1965)], and the central idea of the present sentencing statute is to allow a jury to take into account such relevant information, bearing upon a defendant's character and record, as is applicable to the task of considering the enumerated aggravating circumstances. Consideration of prior "convictions" was not intended to be a meaningless and abstract ritual, but rather a process through which a jury would gain considerable insight into a defendant's character. The nature of an offense, as ascertained through examination of the circumstances concomitant to its commission, has much bearing upon the character of a defendant, and, indeed, without reference to those facts and circumstances, consideration of "convictions" would be a hollow process, yielding far less information about a defendant's character than is relevant.

Convictions are defined by the essential and necessary facts upon which they are based, and judgments of sentence flow naturally from, and form an integral part of, those convictions. Thus, reason impels that the construction of the term "convictions" in 42 Pa.C.S.A. § 9711(d)(9) be such as to permit consideration of the essential and necessary facts pertaining to the convictions, including the circumstances of the crimes and the sentences imposed.

505 Pa. at 288–89, 479 A.2d at 465.

Appellant argues that, in *Beasley*, this Court permitted "some explanation of the facts surrounding [the appellant's] conviction only because the conviction was being introduced as a valid aggravating circumstance. . . . The Court was clearly *not* making a finding that the facts surrounding a prior conviction were admissible in instances where that prior conviction did not qualify as an aggravating circumstance." Appellant's Brief at 45 (emphasis original). Appellant contends that, because, by agreement, his convictions for the Nichols, Levato and Newcomer homicides could not be "introduced in the present case as valid aggravating circumstances, the facts surrounding those convictions are wholly immaterial and irrelevant." *Id.*

The Commonwealth maintains that, although this Court's language in *Beasley* referred to aggravating circumstances, "the same reasoning applies equally to convictions introduced to rebut [Appellant's] claim that he is now a good person." Commonwealth's Brief at 46. We agree with the Commonwealth in this regard. As discussed above, evidence regarding the circumstances of the Nichols, Levato, and Newcomer homicides was admissible to demonstrate Appellant's motive and intent in killing Officer Miller, and to rebut the evidence of good character offered by Appellant. *Beasley* does not stand for the proposition that evidence of prior convictions is admissible only if such evidence is used to support a finding of aggravating circumstances.

Appellant additionally argues that, based on this Court's statement in *Beasley* that the term "conviction" under Section 9711(d)(9) includes consideration of the surrounding circumstances of the crime, "an agreement not to introduce 'convictions' must logically require that not only should convictions not be introduced but so [too] should their underlying facts and circumstances be excluded." Appellant's Brief at 46. This Court, however, did not countenance such reverse logic in *Beasley,* and we decline to do so now.

### 8. *Failure to Exclude Evidence of the Convenience Store Robbery*

Appellant next contends the trial court erred in allowing the Commonwealth to introduce at his penalty hearing, for the purpose of establishing an aggravating circumstance, the testimony of a victim of a convenience store robbery that occurred on December 9, 1979, and to which Appellant pled guilty in 1981. *See* Appellant's Brief at 37 (Argument VI). Appellant asserts that evidence of this robbery conviction had already been introduced through the testimony of the prosecuting officer, Robert Luniewski, as well as through introduction of the criminal information, when the Commonwealth called a victim of the robbery, Mary Loraine Campbell, as a witness. The victim testified to additional facts regarding the robbery, including the layout of the store; her familiarity with Appel-

lant as a customer prior to the robbery; her efforts in the investigation; and her testimony at Appellant's preliminary hearing in 1980. The Commonwealth then asked the victim to describe the effect the robbery had on her immediately after it occurred and since that time, and the victim responded:

> During the time the robbery was taking place I was terrified. I was very much afraid for my life. I knew in my heart that they intended to kill me because I could identify them not by name but because they had been in the store so many times, and I felt that because I could identify them that they did not want me alive.

N.T. Trial, 7/5/05–7/26/05, at 518.

█ Appellant's counsel objected to the victim's testimony and sought to have it stricken from the record on the basis that the robbery conviction was introduced as an aggravating circumstance, and the victim's testimony went beyond the details of the robbery itself into victim impact testimony, which was not relevant for the purpose of using the conviction as an aggravating factor.[12] Although Appellant concedes the jury did not find that an aggravating circumstance was present as a result of the robbery, he avers the victim's testimony was "highly prejudicial" and harmful to his case. Appellant's Brief at 39. Appellant additionally argues the trial court erred in allowing consideration of the single robbery conviction to be considered as a possible aggravating circumstance because the language of the sentencing code "requires more than one conviction" in order to constitute an aggravating circumstance. *Id.* As the jury failed to find that an aggravating circumstance existed based on evidence of the robbery, we hold Appellant is not entitled to relief.

In *Commonwealth v. Jones*, this Court considered a similar argument by the appellant. In that case, Jones argued, *inter alia,* that three aggravating circumstances—which, as in the instant case, were not found by the jury—should not have

12. Pursuant to 42 Pa.C.S.A. § 9711(d)(9), evidence that a defendant "has a significant history of felony convictions involving the use or threat of violence to the person" may be offered as an aggravating factor during sentencing.

been presented to the jury because they were not supported by sufficient evidence. Jones maintained that he was nonetheless prejudiced by the presentation of the aggravating circumstances because the presentation "branded [him] as the alleged leader of [a drug organization] rather than the victim's murderer." 542 Pa. 464, 521, 668 A.2d 491, 519 (1995). In rejecting the appellant's argument, this Court explained:

A death sentence will only be reversed if the jury relied on an unsupported and, therefore, improper aggravating circumstance in rendering its penalty phase verdict. *Commonwealth v. Williams*, 537 Pa. 1, 24, 640 A.2d 1251, 1263 (1994). However, reversal of a defendant's sentence is not warranted by submitting an aggravating circumstance to the jury if the jury does not find beyond a reasonable doubt the existence of that improper aggravating circumstance in rendering its verdict of death since error is harmless.

*Id.* at 521–22, 668 A.2d at 519; *see also Commonwealth v. Cousar*, 593 Pa. 204, 233, 928 A.2d 1025, 1042 (2007) (prosecutor's reference to the physical proximity of another individual to establish the aggravating circumstance of knowingly creating a grave risk of death to another, even if "inappropriate," was harmless error because jury did not find (d)(7) aggravator (citing *Jones* )); *Commonwealth v. Chmiel*, 585 Pa. 547, 612, 889 A.2d 501, 539 (2005) ("A death sentence will only be reversed if the jury relied on an unsupported and, therefore, improper aggravating circumstance in rendering its penalty phase verdict." (citing *Jones* )).

Although *Jones* involved aggravating circumstances which were not supported by sufficient evidence, and the instant case involves evidence which, according to Appellant, went beyond what was appropriate for establishing an aggravating circumstance in the first instance, the basis of both Jones' and Appellant's argument is that the improperly admitted evidence prejudiced the jury against them. Moreover, in both cases, the jury declined to find an aggravating circumstance based on the improperly admitted evidence. Thus, consistent with our holding in *Jones*, we hold that any error with regard to

the admission of testimony concerning the convenience store robbery was harmless, and does not entitle Appellant to relief.

### 9. *Admission of Photograph of the Victim*

Appellant next contends the trial court erred in admitting at his sentencing hearing a photograph of Officer Miller's body at the crime scene. *See* Appellant's Brief at 40 (Argument VII). In support of his argument, Appellant contends the photograph "had no probative value," because the jury had already rendered a first-degree murder conviction, and evidence regarding the crime scene, including the location of Officer Miller's body, had already been introduced by other witnesses. Appellant's Brief at 40. Appellant further avers the photograph had "great prejudicial impact." *Id.* at 41.

The Commonwealth disputes Appellant's suggestion that the photograph depicting the location of Officer Miller's body was inflammatory. The Commonwealth additionally argues that indirect testimony regarding what is depicted in a photograph "does not inevitably render direct photographic evidence inadmissible," Commonwealth's Brief at 40, and, in support of its position, cites this Court's decision in *Commonwealth v. Begley*, 566 Pa. 239, 268, 780 A.2d 605, 622–23 (2001) ("even where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs"). Finally, the Commonwealth notes that this same issue was raised by Appellant's co-defendant, Lesko, and was rejected by this Court, in *Lesko*, 553 Pa. at 249, 719 A.2d at 225.

The admissibility of photographic evidence depicting a crime scene is within the sound discretion of the trial court, and only an abuse of that discretion will constitute reversible error. *Commonwealth v. Baez*, 554 Pa. 66, 97, 720 A.2d 711, 726 (1998). In determining whether a photograph is admissible, a trial court must first consider whether the photograph is, by its very nature, inflammatory. If the photograph is deemed inflammatory, the court must then determine "whether the essential evidentiary value of the photograph

outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury." *Id.*

In the instant case, the trial court admitted the crime scene photograph into evidence, having determined that the photograph was not prejudicial because, *inter alia*, the photograph was black and white; the injuries Officer Miller sustained were not visible because his body was covered by a blanket; and, due to the time of night and the weather and road conditions, it was difficult to determine from the photograph whether there was any blood visible on the road. Trial Court Opinion, 10/11/07, at 20.

As the Commonwealth points out, in *Lesko, supra,* John Lesko challenged the admission of evidence consisting of revolvers, bullets, autopsy reports, and the same photograph of the crime scene at issue herein. With respect to the photograph, this Court explained,

the only photograph admitted over defense objection was a black and white photograph of the crime scene in the Miller homicide. It showed the officer's body lying in the road under a blanket. This photograph served to familiarize the jury with the facts and circumstances of the crime and was not unduly prejudicial.... [T]his evidence was a relevant and proper factor in the jury's consideration of the sentence which should be imposed.

553 Pa. at 249–50, 719 A.2d at 225.

We likewise hold that Appellant is not entitled to relief on his claim. Our review confirms the trial court's characterization of the photograph: it is in black and white, and, although it shows Officer Miller's body and blood on the road, his body is covered with a blanket so that his wounds are not visible. Accordingly, we cannot conclude that it was inflammatory, and on this basis we reject Appellant's claim.

### 10. *Rutherford Testimony*

Appellant next asserts that one of the Commonwealth's witnesses, Richard Rutherford, committed perjury at Appellant's first trial when he testified that he had not entered into

a plea agreement. *See* Appellant's Brief at 44 (Argument IX). Appellant contends that it came to light at his penalty trial that Rutherford "knew and was aware that the Commonwealth was not going to charge him at all or bring any evidence against him at the juvenile hearing if he cooperated," and, thus, that Rutherford's testimony was false. *Id.* at 44. Appellant concedes, however, that this issue "is not technically an appellate issue from the sentencing proceeding," and that he is raising the argument now "to avoid potential waiver of future collateral appeals." *Id.* As this issue is not properly before us, we do not address it further.

### B. Challenges to 42 Pa.C.S.A. § 9711

In addition to his claims based on the trial court's evidentiary rulings, Appellant raises numerous challenges to 42 Pa. C.S.A. § 9711, which governs sentencing procedures in first-degree murder cases, all of which were raised before and rejected by the trial court as having been previously litigated before the Superior Court, either on Appellant's immediate appeal of the denial of his pre-trial motion to bar resentencing, *Travaglia*, 723 A.2d 190, or on the Commonwealth's appeal of the denial of its motion *in limine* prior to Appellant's new penalty hearing, *Travaglia*, 792 A.2d 1261. *See* Trial Court Opinion, at 5. We first address his general challenges to Section 9711.

#### 1. *General Challenges to Section 9711*

Appellant contends that Section 9711 violates due process and equal protection by allowing imposition of the death penalty in an arbitrary fashion. *See* Appellant's Brief at 74 (Argument XVI). Specifically, he argues "the statute fails to provide specific guidelines that would assist the jury in [weighing] aggravating and mitigating factors, thereby ensuring consistence, as well as a rational and fair application of the statute." Appellant's Brief at 74. He further claims the statute "allows complete and unbridled discretion on the part of the prosecutor in determining whether or not to apply the death penalty," and "allows for different standards to be established by each of the prosecutors in the 67 different

counties in the Commonwealth of Pennsylvania without the existence of any guidelines." *Id.* at 74–75. This Court, however, rejected this same argument in *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986) (finding the death penalty statute constitutional and rejecting the argument that prosecutorial discretion in seeking the death penalty violates due process by allowing for arbitrary selection of its imposition). Thus, Appellant's argument fails.

Appellant next argues that subsection (d)(1) of Section 9711, which provides for an aggravating circumstance where the victim is, *inter alia,* a state, local, or federal law enforcement official, is unconstitutional because it "arbitrarily and unfairly places a higher worth or value" on the lives of law enforcement and/or governmental authorities, thereby "violating notions of fundamental fairness and equal protection" in both the United States and Pennsylvania Constitutions, and violating the "fundamental notion in constitutional law that all men are created equal." *See* Appellant's Brief at 75 (Argument XVII). This Court repeatedly has upheld the aggravator set forth in Section 9711(d)(1) against the same constitutional challenge raised by Appellant. *See Commonwealth v. Abdul–Salaam,* 544 Pa. 514, 678 A.2d 342 (1996); *Commonwealth v. Bracey,* 541 Pa. 322, 662 A.2d 1062 (1995); *Commonwealth v. Gibbs,* 533 Pa. 539, 626 A.2d 133 (1993). Thus, Appellant's argument on this issue, the totality of which is set forth above, also is without merit.

## 2. *The 1988 Amendments*

Several of Appellant's challenges to Section 9711 specifically relate to the 1988 amendments. Prior to the 1988 amendments, this Court "had the authority to either affirm a sentence of death or remand the matter for imposition of a life imprisonment sentence." *Commonwealth v. Wharton,* 542 Pa. 83, 88, 665 A.2d 458, 460 (1995) (citing 42 Pa.C.S.A. § 9711(h)(2)). The 1988 amendments to Section 9711, however, require that a new sentencing hearing be conducted whenever a sentence of death is vacated, except where it is vacated

for disproportionality or lack of aggravating factors. 42 Pa. C.S.A. § 9711(h)(4).[13]

Appellant argues, *inter alia*, that the 1988 amendments to Section 9711 violate his equal protection and due process rights because the amendments arbitrarily create a class of individuals who must face the death penalty instead of a life sentence, simply because those individuals did not obtain relief prior to 1988. *See* Appellant's Brief at 41, 51 (Arguments VIII, XII). In support of his argument, Appellant avers that, had his direct appeal of his judgment of sentence been "correctly decided" by this Court prior to 1988, when Section 9711(h) required a remand for imposition of a sentence of life imprisonment in instances where this Court vacated a defendant's sentence of death, he would not have been subjected to the possibility of a second death sentence under the amended version of Section 9711. Appellant's Brief at 42. Thus, Appellant claims he is subjected to harsher punishment than individuals who had their death sentences vacated by this Court prior to 1988.

This Court, however, has repeatedly rejected the argument that "retroactive" application of Section 9711(h)(4) offends a defendant's due process and equal protection rights, and we have held that application of Section 9711(h)(4) is constitutionally permissible. *See Commonwealth v. Chambers*, 546 Pa. 370, 381–82, 685 A.2d 96, 102 (1996) (holding that application of Section 9711(h) as amended did not deprive appellant of any constitutional right); *Commonwealth v. Young*, 536 Pa. 57, 66, 637 A.2d 1313, 1317 (1993) (rejecting appellant's argument that retroactive application of Section 9711(h) "deprived him of the right to have his death sentence automatically modified to life imprisonment and the right not to face the possibility of a

13. Section 9711(h)(4) presently provides:

If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence, then it shall remand for the imposition of a life imprisonment sentence. If the Supreme Court determines that the death penalty must be vacated for any other reason, it shall remand for a new sentencing hearing pursuant to subsections (a) through (g). 42 Pa.C.S.A. § 9711(h)(4).

518

death sentence"). Accordingly, we reject Appellant's due process and equal protection challenges to the 1988 amendments to Section 9711.

In a separate argument, Appellant also contends that application of the 1988 amendments to his case constitutes an *ex post facto* law. *See* Appellant's Brief at 73 (Argument XV). In so arguing, Appellant merely states: "Defendant adopts as his argument on this issue Justice Cappy's dissent in *Commonwealth v. Young*," which he then proceeds to quote at length. Unfortunately for Appellant, the argument upon which he relies was the basis of the *dissent* in *Young*, and was not adopted by a majority of this Court, which concluded "Section 9711(h) as amended did not deprive appellant of any substantial right protected by the Ex Post Facto Clause." *Young*, 536 Pa. at 67, 637 A.2d at 1318. Further, indeed, we have since reiterated that application of the 1988 amendments to Section 9711 does not violate the *ex post facto* clause. *See Lesko*, 553 Pa. at 239–40, 719 A.2d at 220. Thus, Appellant's argument on this point is without merit.

Appellant further maintains there is "no statutory authority" under the Sentencing Code for a remand for a new sentencing hearing, as opposed to the automatic imposition of a sentence of life imprisonment, in his case. *See* Appellant's Brief at 68 (Argument XIV).[14] In making this argument, Appellant first emphasizes that it was not *this* Court, but rather the Court of Appeals for the Third Circuit in a civil *habeas corpus* proceeding, which vacated his death sentence. As a result, Appellant argues that his "appellate remedies in Pennsylvania terminated before the 1988 amendment was enacted," and the new provisions of Section 9711(h)(4), which refer to determinations by "the Supreme Court," *see supra*

14. Although Appellant claims in his Statement of Questions that the imposition of a new sentencing hearing violates his 5th, 8th, and 14th Amendment rights under the United States Constitution and Art. 1, § 9 of the Pennsylvania Constitution, in the argument section of his brief, he fails to cite any of the Amendments, or precisely explain how imposition of a new sentencing hearing violates the Amendments. Furthermore, he does not discuss Art. 1, § 9 of the Pennsylvania Constitution.

note 13, "can never come into effect in this case." Appellant's Brief at 70. Appellant further argues that, to the extent the 1988 amendments were intended to apply to "all criminal offenses committed on or after the effective date of this act and to all criminal cases and appeals pending on the effective date of this act," the term "pending" should be interpreted to mean "pending on appeal before the Pennsylvania Supreme Court." *Id.* at 70, 71. As his case was not pending before this Court at the time his death sentence was vacated, Appellant maintains that the 1988 amendment to Section 9711 is inapplicable to his case.

This Court, however, considered and rejected the same argument in *Lesko, supra:*

Appellant further asserts that the resentencing provision does not apply where a death sentence has been vacated by any court other than the Supreme Court of Pennsylvania. He relies on the following language in 42 Pa.C.S. § 9711(h)(4): *"If the Supreme Court determines that the death penalty must be vacated* for any other reason [i.e., reasons other than disproportionality or lack of evidence of aggravating circumstances], *it shall remand for a new sentencing hearing* pursuant to subsections (a) through (g)." Appellant reasons that because the statute does not specify what is to occur when courts other than this one vacate a sentence, the legislature must have intended that there would be no new sentencing hearing and that a remand for imposition of a life sentence would occur. Such an approach would lead, however, to a highly irrational sentencing scheme. Those whose sentences are vacated by this court would be in a far worse position than those whose sentences are vacated by other courts, since the former would be at risk of incurring another death sentence while the latter would not. The legislature cannot be deemed to have intended such an illogical result. See 1 Pa.C.S. § 1922(1) (presumption that the legislature did not intend a result that is absurd or unreasonable).

Further, appellant asserts that the resentencing provision is inapplicable to cases that were pending before any court

other than the Supreme Court of Pennsylvania at the time of the 1988 amendment. Appellant notes that, because we completed appellate and post-conviction review of this matter in 1986, this case was not pending before us at the time of the 1988 amendment. The statute contains no language, however, that makes it applicable only to cases pending in a particular court. In fact, the legislature expressly designated that the amendment should be applied to "*all* criminal cases and appeals *pending* on the effective date of this act." Act of 1988, Dec. 21, P.L. 1862, No. 179, § 3 (emphasis added). This plainly sets no limits as to the courts in which cases and appeals were pending.

553 Pa. at 240–41, 719 A.2d at 220 (emphasis and alterations original). Accordingly, we reject Appellant's argument that, under the present version of Section 9711(h)(4), he may not be subjected to a new sentencing hearing.

## C. Application of *Commonwealth v. MacPhail*

Appellant next contends that his prosecution for the murder of Officer Miller is barred under 18 Pa.C.S.A. § 110 and this Court's holding in *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1997). *See* Appellant's Brief at 52 (Argument XIII). In *McPhail*, a plurality of this Court[15] concluded that courts of common pleas enjoy jurisdiction all over the Commonwealth; in other words, the subject matter jurisdiction of the courts of common pleas is general and not limited to the territory of the county wherein the courts sit. We reasoned that, under 18 Pa.C.S.A. § 110, charges arising from crimes committed in different counties, but which constituted a single criminal episode, were in the jurisdiction of a single court. In the instant case, the trial court rejected Appellant's claim, finding it was previously considered and rejected by the Superior Court in *Commonwealth v. Travaglia*, 723 A.2d at 195.

15. *McPhail* was decided by a six-justice court. The Opinion Announcing the Judgment of the Court was authored by then Justice Flaherty and joined by Justice Zappala. Justice Cappy authored a concurring opinion joining the opinion of Justice Flaherty. Justice Nigro concurred in the result reached by the opinion of Justice Flaherty. Justice Newman filed a dissenting opinion that was joined by Justice Castille.

In *Commonwealth v. Lesko,* 609 Pa. 128, 15 A.3d 345, 367 n. 13 (2011),[16] Lesko similarly argued that prosecution for the murder of Officer Miller should have been barred under 18 Pa.C.S.A. § 110 and *McPhail* as a result of his guilty plea to the murder of William Nichols because the two murders were part of a single criminal episode. This Court explained that, notwithstanding Lesko's attempt to frame an issue under *McPhail* as a resentencing claim, such a claim is a *guilt-phase claim,* and, as such, is subject to the time limitations of the PCRA. For the following reasons, Appellant's *McPhail* claim must likewise be viewed as a guilt-phase claim, and, therefore, is subject to the time limitations of the PCRA.

Appellant's judgment of sentence became final in 1984, after his petition for *certiorari* in the United States Supreme Court was denied. Appellant's subsequent PCHA petition was denied in 1985; thus, Appellant did not qualify for the one-year tolling provision contained in the 1995 amendments to the PCRA. *See Commonwealth v. Fahy,* 558 Pa. 313, 321, 737 A.2d 214, 218 (1999) (where a judgment of sentence becomes final on or before the effective date of the amendments to the PCRA, a petition will be deemed timely if the petitioner's *first* petition is filed within one year of the effective date of the amendments). Appellant therefore had until January 16, 1996, the date the 1995 amendments to the PCRA took effect, to file a second or subsequent PCRA petition raising claims from his 1981 guilt trial. Appellant did not raise the instant claim until 1997, when he filed his omnibus pre-trial motion with the trial court. Accordingly, as in *Lesko,* Appellant's claim is time-barred under the PCRA.

## D. Commonwealth's Decision to Seek the Death Penalty

Appellant next alleges the Commonwealth should have been precluded from seeking the death penalty based on an alleged

16. In this consolidated cross-appeal, the Commonwealth challenged the PCRA court's award of a new trial and penalty hearing; Lesko challenged portions of the PCRA court's ruling that denied certain claims for relief. This Court reversed the PCRA court's order granting a new trial and penalty hearing, and dismissed Lesko's petition for relief.

522

representation made by the District Attorney of Westmoreland County, Albert Nichols, during plea negotiations concerning additional pending cases against Appellant, wherein D.A. Nichols purportedly indicated that, in the event of a retrial for the murder of Officer Miller, he would not seek the death penalty. *See* Appellant's Brief at 76 (Argument XVIII). The trial court, in rejecting this claim, noted that it had been raised and rejected by the Superior Court in *Travaglia,* 723 A.2d at 196.

Appellant presently avers that both he and his attorney, Westmoreland County Public Defender Dante Bertani, testified that the alleged promise by D.A. Nichols was a significant factor in Appellant's decision to plead guilty to the Levato and Newcomer homicides, and he argues that this testimony "stands alone," as the Commonwealth failed to call any witnesses, including D.A. Nichols, Assistant D.A. Timothy Geary, or the Honorable Donetta Ambrose, former Chief Judge of the United States District Court for the Western District of Pennsylvania, to contradict it. Appellant further maintains that "[m]erely because the agreement does not appear to be reflected on the record does not, in and of itself, mean that it did not take place or was not an inducement to [Appellant] to plead guilty." Appellant's Brief at 77.

As this Court explained in *Commonwealth v. Spence,* where a plea agreement has been entered of record and accepted by the trial court, the state is required to abide by the terms of the plea agreement. Prior to entry of the plea, however, a defendant has no right to specific performance of the agreement. 534 Pa. 233, 248, 627 A.2d 1176, 1184 (1993). The Superior Court, in addressing Appellant's contention that, in exchange for Appellant's guilty plea to the Levato and Newcomer homicides, D.A. Nichols agreed that he would not seek the death penalty in any retrial for the murder of Officer Miller, determined:

Contrary to Appellant's contention, the plea colloquy indicates that the guilty pleas would not be used as aggravating circumstances should the Miller case be retried. There is no mention that the District Attorney represented that he

would not seek the death penalty based on other aggravating circumstances, i.e., the police officer's death. Therefore, Appellant's claim is meritless.

*Travaglia,* 723 A.2d at 196.

Upon review of the transcript of Appellant's guilty pleas, we find the Superior Court is correct in its determination that, based on the plea colloquy, D.A. Nichols agreed only that the Commonwealth would not introduce evidence of Appellant's guilty pleas as aggravating circumstances to support imposition of the death penalty, not that the Commonwealth would not seek the death penalty in the event of a retrial in the Miller case. Indeed, as the Commonwealth argues, "[h]ad an agreement not to seek the death penalty existed, there would have been no need to have an agreement not to use the Newcomer and Levato homicides as aggravating circumstances in the event of a retrial." Commonwealth's Brief at 66. As the record does not support Appellant's assertion that D.A. Nichols agreed not to seek the death penalty in any retrial, Appellant is not entitled to relief.

### E. Statutory Review of Death Penalty Verdict

■ Finally, pursuant to the Sentencing Code, this Court is required to conduct a statutory review of the death sentence and we must affirm the sentence unless we determine that:

(i) the sentence of death was the product of passion, prejudice, or any other arbitrary factor; or

(ii) the evidence fails to support the finding of at least one aggravating circumstance . . .

42 Pa.C.S.A. § 9711(h)(3). After careful review, we conclude that the sentence of death was not a product of passion, prejudice, or any other arbitrary factor; rather, it was based on the evidence presented at trial, namely, the deliberate shooting and killing of Officer Miller. Furthermore, the evidence supports the jury's finding of at least one aggravating circumstance, namely, that the victim was a police officer killed in the performance of his duty, which the jury determined outweighed the two mitigating circumstances that Appellant had lived as a well-adjusted inmate in prison, and that

he had changed his life and adopted a Christian lifestyle. Accordingly, we affirm the verdict and the judgment of sentence of death imposed upon Appellant by the Court of Common Pleas of Westmoreland County.[17]

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices EAKIN, BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I join Parts A–2, A–5 (subject to my comments on Part A–4), A–6, A–9, A–10, B, C, D, and E of the majority opinion, concur in the result relative to the balance, and offer the following comments organized according to the subject headings of the majority opinion.

## A. Challenges to Evidentiary Rulings

### 1. *Trial Court's Exclusion of Kenneth Miller's Testimony*

I respectfully disagree with the majority's conclusion that the trial court appropriately excluded a portion of prison supervisor Kenneth Miller's testimony. *See* Majority Opinion, at 490–94, 28 A.3d at 873–75. Initially, the trial court sustained an objection to Mr. Miller's testimony concerning Appellant's ability to function in the general population as speculative. *See* N.T., at 779. Trial counsel responded by attempting to lay a further foundation. *See id.* The Commonwealth objected again on grounds of relevance, and the trial court explained:

Here's the reason I'm sustaining [the objection]: The jury has to decide, they have to weigh aggravating and mitigating circumstances and they make their sentencing choice. Whatever the sentencing choice is, the Department of Corrections has to live with. So the adjustment of other inmates or what he thinks the adjustment might be *I don't think is*

17. The Prothonotary of the Supreme Court is directed to transmit a complete record of this case to the Governor in accordance with 42 Pa.C.S.A. § 9711(i).

*relevant. And that's the reason I'm sustaining the objection.*

*Id.* at 780 (emphasis added).

As Appellant explains, the court was wrong in its relevance assessment. *See Skipper v. South Carolina*, 476 U.S. 1, 5, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986) ("[E]vidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating."). Moreover, in ruling the opinion was irrelevant, the court foreclosed trial counsel's efforts to establish a further foundation for admissibility. Thus, while the majority's finding that Mr. Miller testified as a fact witness and not an expert may be correct, *see* Majority Opinion, at 493–94, 28 A.3d at 875, it is questionable whether the responsibility for this should fall to Appellant, where his counsel was not permitted to establish a foundation for the opinion. Moreover, the majority does not discuss the role of lay opinions. *See* Pa.R.E. 701.

In my view, the trial courts should extend a degree of latitude to capital defendants in presenting this type of testimony. *Accord Valle v. State*, 502 So.2d 1225, 1226 (Fla.1987) (awarding a new sentencing hearing on the basis that a trial court had improperly excluded testimony of a clinical psychologist and two corrections consultants proffered in support of the defendant's claim that, if given a life sentence, he would be a model prisoner); *People v. Lucero*, 44 Cal.3d 1006, 245 Cal.Rptr. 185, 750 P.2d 1342, 1355 (1988) (following *Valle* ). I find the *Valle* court's approach to be a rational extension of the principle, from *Skipper*, that "a defendant must be allowed to present all relevant mitigating evidence to the jury in his efforts to secure [a life sentence]." *Valle*, 502 So.2d at 1226. Of course, the Commonwealth should also be free to present contrary evidence which is fairly responsive. *See Commonwealth v. Hughes*, 581 Pa. 274, 332–34 & n. 40, 865 A.2d 761, 796–97 & n. 40 (2004).[1]

---

1. In this regard, I would note only that the Commonwealth is restricted to the character trait placed at issue by the defense. *See id.*

While I therefore differ with the majority's holding, I regard the trial court's error as harmless, as the purport of Mr. Miller's testimony (that he had known Appellant for ten years; Appellant had no misconducts; he was mature, polite and did his job well; he maintained the highest level of trust; and he got along well with other inmates, *see* N.T., at 767–769), suggested the opinion Appellant wished to adduce in any event. Moreover, Appellant was permitted to introduce a forensic psychiatrist's opinion that he manifested a low potential for future aggression. *See* N.T., at 875. Notably, based on Appellant's extensive mitigation case (including testimony from Appellant's wife, his mother, school officials and teachers, numerous friends, neighbors, several clergypersons, a former attorney for Appellant, prison supervisors and guards, a corrections counselors, and a forensic psychiatrist), one or more jurors found that he had lived as a well-adjusted inmate since 1982, and that he had changed his life and adopted a Christian lifestyle. *See* N.T., at 1184–85. In the circumstances, and particularly given the strength of the Commonwealth's case of aggravation, there does not seem to me to be a substantial likelihood of a different outcome had Mr. Miller been permitted—as I believe he should have—to offer an additional opinion concerning Appellant's amenability to being introduced into the general inmate population.

### 3. *Superior Court's Ruling that Evidence of Positive Prison Adjustment is Rebuttable*

The majority holds that the Commonwealth may present evidence of a defendant's prior bad acts to rebut claims of rehabilitation, reform, and an associated lack of future dangerousness. *See* Majority Opinion, at 498–99, 28 A.3d at 878–79. One substantial obstacle to a reasoned application of such holding is that it is in conceptual tension with this Court's position, for many years, that evidence of prior bad acts is not indicative of future dangerousness. *See Commonwealth v. Chmiel,* 585 Pa. 547, 611, 889 A.2d 501, 539 (2005) ("This Court has recognized consistently that evidence regarding a defendant's past violent convictions or conduct does not implicate the issue of his or her future dangerousness."). This analysis

was developed in the context of the requirement for a life-means-life instruction under *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (plurality), and there is some uncertainty in its application to matters tried after the United States Supreme Court's decision in *Kelly v. South Carolina*, 534 U.S. 246, 253, 122 S.Ct. 726, 731, 151 L.Ed.2d 670 (2002) (explaining, in the context of *Simmons*, that "[a] jury hearing evidence of defendant's demonstrated propensity for violence reasonably will conclude that he presents a risk of violent behavior[.]"). *See, e.g., Commonwealth v. Spotz*, 610 Pa. 17, 42–43, 18 A.3d 244, 302–03 (2011) (taking a narrow approach to *Kelly's* application).

However *Kelly* is to be interpreted going forward, the underlying difficulty remains that the Court must enforce a narrowing approach to the death penalty statute to conform with the federal constitutional mandates of reasonable justification for the imposition of a more severe sentence on the defendant as compared to others convicted of murder, *see Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983), and the opportunity for the capital defendant to adduce all relevant mitigating evidence, *see Skipper*, 476 U.S. at 4, 106 S.Ct. at 1671. In a number of respects, however, including the above, the appearance is that this Court is not enforcing such a narrowing construction. *Cf. Commonwealth v. Houser*, 610 Pa. 264, 279–82, 18 A.3d 1128, 1138–39 (2011) (Saylor, J., concurring and dissenting) (commenting on a judicial narrowing of a statutory mitigating circumstance in tension with the express statutory prescription).

I would permit a defendant to offer mitigation evidence of rehabilitation, reform, and prospects for a non-violent future as a prisoner without pain of lifting the general bar against such pre-incarceration other-bad-acts evidence as would be otherwise inadmissible.[2] I offer my reasoning in this regard, also, as my response to Part A–7 of the Majority Opinion.

2. Significantly, the Commonwealth was appropriately permitted to introduce rebuttal evidence concerning Appellant's misconduct in prison. *See, e.g.,* N.T., at 1027–28.

## 4. *Evidence of Appellant's Guilty Plea to the Nichols Homicide*

As the majority indicates, the federal district court directed that Appellant be discharged from custody, unless the common pleas court held a resentencing hearing "at which evidence of his Indiana County guilty plea [in the matter of the killing of William Nichols] is excluded." Majority Opinion, at 499–500, 28 A.3d at 879 (citation omitted). As the majority further explains, "the federal court order does not, on its face, link the preclusion of evidence of Appellant's guilty plea to the Nichols homicide to an attempt by the Commonwealth to establish aggravating factors[.]" Majority Opinion, at 501–02, 28 A.3d at 880.

Thus, it is very troublesome to me that, in a 30–year–old capital litigation on resentencing per a federal court order, the Commonwealth would attempt (successfully) to do what the federal order said it could not, thus placing any ensuing death verdict at substantial risk on further federal review. The Commonwealth's case for death encompassed compelling aggravation without the need to bring the compliance with the federal mandate into question.

The Commonwealth's desire to impose capital punishment on Appellant for the heinous killing spree in which he participated (and, indeed, appears from the record to have led) is quite understandable. It also must be appreciated, however, that there are substantial downsides to a no-stones-unturned approach to death-penalty prosecution, for example, in terms of risk, delay, and uncertainty. It is my considered perspective that the Commonwealth should take a more conservative approach in these cases to minimize such factors in the multiple layers of close scrutiny ensuing upon issuance of a death verdict. With respect to the present case, I reiterate that a very strong case for death was put forth without recourse to the guilty plea and/or conviction pertaining to the killing of Mr. Nichols.

My vote to join in the result relative to this claim derives from the fact that there is at least some degree of ambiguity as to the intent of the federal order, given the federal magis-

trate's footnoted pronouncement relied upon by the majority, *see* Majority Opinion, at 501–02, 28 A.3d at 880,[3] and the analysis of the federal mandate is peculiarly a federal concern, particularly since the matter previously was exhausted in the Pennsylvania state court system.

### 8. *Failure to Exclude Evidence of the Convenience Store Robbery*

Finally, I question the bright-line rule the majority derives from *Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491 (1995), which appears to suggest that the Court will not consider the admissibility and/or prejudicial character of Commonwealth evidence offered in connection with an aggravating circumstance, so long as the aggravator is not found by the jury. *See* Majority Opinion, at 511–13, 28 A.3d at 880–81. I am unable to reconcile such a categorical approach with the federal constitutional standard for harmless error pertaining on direct review, which appears to me to be circumstance specific. *See Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 164 (1978). In this regard, I believe it to be the Commonwealth's burden to establish, beyond a reasonable doubt, that the error did not contribute to the overall verdict (not just to the finding, or not, of an aggravator). *See, e.g.,*

---

**3.** The counter-position, of course, is that the arrangement to defer sentencing encompassed a preclusion of *any* use of the conviction pertaining to the Nichols homicide, since, under the agreement, the Indiana County conviction simply would not come into being until after the Westmoreland County trial. There is as much (and more) language in the federal magistrate's report and recommendation supporting such a broader perspective regarding the preclusion as there is to bolster the majority's narrowing construction. *See, e.g.,* Report and Recommendation, *Travaglia v. Morgan,* Civ. No. 90–1469, *slip op.* at 14 (W.D.Pa. Oct. 7, 1996) (indicating that various of Appellant's attorneys testified to their belief in "assurances ... that the plea could not be used against [Appellant] in Westmoreland County"); *id.* at 15 (referencing testimony to the effect that sentencing was repeatedly postponed in Indiana County at the request of the assistant district attorney "to insure that the plea could not be introduced during the Westmoreland County trial"); *id.* (crediting such testimony as establishing that "all the parties involved in [Appellant's] case ... believed that the plea petitioner entered in Indiana could not be used in the Westmoreland County trial"). As the majority otherwise recognizes, the actual federal order is consistent with the broader approach.

530

*Commonwealth v. Howard,* 538 Pa. 86, 99–100, 645 A.2d 1300, 1307 (1994). Given the possibility that a prejudicial taint may impact sentencing proceedings more broadly than on the specific point for which the evidence is offered, a more searching review is required upon the discernment of a preserved trial-court error. I therefore join the majority on this point only upon my conclusion that the victim-impact evidence relative to the robbery was very modest in the context of the overall presentations of aggravation and mitigation, and therefore, the possibility of an effect on the outcome is insubstantial.