J-S27026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM ARTHUR CAVANAUGH, SR. | : | |
| | : | |
| Appellant | : | No. 719 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 3, 2020
In the Court of Common Pleas of Bedford County Criminal Division at
No(s): CP-05-CR-0000016-2018

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: OCTOBER 12, 2021**

Appellant William Arthur Cavanaugh, Sr., appeals from the judgment of sentence imposed after a jury convicted him of rape of a child less than thirteen years old, involuntary deviate sexual intercourse with a person less than sixteen years old, involuntary deviate sexual intercourse with a child, corruption of minors, indecent assault of a person less than thirteen years old, and indecent assault of a person less than sixteen years of age.[1] Appellant challenges the admission of testimony that Appellant construes as speculative, the sufficiency of evidence of his rape conviction, the admission of prior bad acts, and the discretionary aspects of his sentence. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(c), 3123(a)(7), 3123(b), 6301(a)(1)(ii), 3126(a)(7), and 3126(a)(8), respectively.

We briefly state the facts, which we glean from the record. Appellant has six biological children, three of which are victims: J.R., M.M., and D.G. *See, e.g.*, Aff. of Probable Cause, 12/19/17. Appellant was charged with numerous sexual offenses occurring between 2012 and 2014 against J.R. (female) and M.M. (male), who were then minors.[2] *See, e.g.*, Information, 1/25/18. During their investigation, the police learned that in 2007, Appellant repeatedly assaulted D.G., his then-adult daughter, and as a result, D.G. had a child in 2008.[3] *See, e.g.*, Aff. of Probable Cause, 12/21/17. The Commonwealth did not charge Appellant with any crimes against D.G.

According to the docket, on June 22, 2018, the Commonwealth filed a Pa.R.E. 404(b) notice, which stated that the Commonwealth would introduce evidence of the sexual offenses against D.G. Pa.R.E. Rule 404(b) Notice, 12/5/19.[4] Appellant filed an answer, arguing that unlike the instant offenses, D.G. was an adult in 2007, and therefore the prior bad acts were more prejudicial than probative.[5] Answer to Pa.R.E. 404(b) Notice, 8/21/18. On

---

[2] J.R. was an adult at the time of Appellant's trial.

[3] Appellant's offenses against D.G. are the subject of Appellant's Pa.R.E. 404(b) challenge.

[4] The trial court timestamped the Rule 404 notice on December 5, 2019, although the notice reflects a service date of June 18, 2018.

[5] At the hearing on the Rule 404(b) notice, the Commonwealth argued common scheme because Appellant committed similar offenses against J.R. at Appellant's home. N.T. Hr'g, 11/25/19, at 9 (citing ***Commonwealth v.***
*(Footnote Continued Next Page)*

December 5, 2019, the trial court, however, held that the evidence at issue "shall be admissible at trial." Order, 12/5/19.

On December 11, 2019, a jury trial began, and we summarize relevant portions of the testimony below. On December 12, 2019, the jury found Appellant guilty of the aforementioned offenses. The trial court ordered a pre-sentence investigation (PSI) report and conducted a hearing at which Appellant was determined to be a sexually violent predator (SVP). On June 3, 2020, the court sentenced Appellant to an aggregate term of 70 to 140 years' imprisonment, which consisted of multiple standard-range sentences.

On Monday, June 15, 2020, Appellant filed a timely post-sentence motion, which challenged the length of his sentence and the admission of D.G.'s testimony under Pa.R.E. 404(b), among other issues. Post-Sentence Mot., 6/15/20, at 1, 3 (unpaginated). On June 17, 2020, the trial court denied Appellant's post-sentence motion. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement.

---

***Aikens***, 990 A.2d 1181 (Pa. Super. 2010)). Appellant countered that the offenses against D.G. occurred at least five years prior to the instant charged offenses and that D.G. was an adult unlike J.R. ***Id.*** at 11. Regardless, Appellant asserted that because of the victims' age difference, the evidence was more prejudicial than probative. ***Id.*** at 12. The trial court noted that unfortunately it had "heard too many of those same type of fact patterns," ***id.*** at 13, and that the case would come down to the credibility of D.G. ***Id.*** at 16. Appellant asserted that a jury may convict him for offenses against J.R. solely because they were tainted by D.G.'s anticipated testimony. ***Id.*** at 18.

Appellant raises the following issues, which we have reordered as follows:

1. Whether the trial court erred and abused its discretion by allowing Trooper [Matthew] Auker to improperly speculate in his testimony regarding the reason [J.R.] denied any inappropriate contact happened between the Appellant and her during the Trooper's July 28th interview of the alleged victim?

2. Whether there was insufficient evidence presented in regard to the conviction as to Count 1 - 18 Pa.C.S. [§] 3121(c) - rape of a child, in that the testimony did not provide that [J.R.] and the Appellant engaged in sexual intercourse?

3. Whether the trial court erred and abused its discretion by allowing the admission of evidence of crimes, wrongs, and other acts pursuant to Pa.R.E. 404(b), specifically evidence of alleged sexual contact between the Appellant and [D.G.], as said evidence's probative value was far outweighed by its potential for unfair prejudice?

4. Whether the sentencing court erred and abused its discretion by failing to take into account evidence regarding the sentencing factors under 42 Pa.C.S. § 9721(b), and erred by issuing [] consecutive sentences, which resulted in a manifestly excessive virtual life sentence?

Appellant's Brief at 6-7 (formatting altered).

**Commonwealth Questioning of Trooper Auker**

In support of his first issue, Appellant argues that a Commonwealth question directed to Trooper Auker called for improper speculation. *Id.* at 32. By way of background, at trial, Trooper Auker testified about his investigation of Appellant in 2013. N.T. Trial, 12/11/19, at 215. Trooper Auker testified that he received permission from Appellant to interview J.R. and interviewed

- 4 -

her outside the front door of Appellant's home on July 28, 2013. ***Id.*** at 215-16. The following exchange occurred at trial:

> [Assistant district attorney:] So did you know where [Appellant] was in relation to the front door of the residence?
>
> [Trooper Auker:] No.
>
> [Assistant district attorney:] So for all you know [Appellant] could have been right around the other side of the front door listening?
>
> [Trooper Auker:] Yes.
>
> [Assistant district attorney:] Now when you asked [J.R.] about any abuse that was going on; do you recall what she said?
>
> [Trooper Auker:] When I asked her about what?
>
> [Assistant district attorney:] Anything inappropriately going on between her and [Appellant].
>
> [Trooper Auker:] She denied anything.
>
> [Assistant district attorney:] Okay. Based on the fact that you had to ask [Appellant's] permission to interview her, and you were interviewing her on the front porch possibly within earshot of [Appellant], did you anticipate any answer?
>
> [Trooper Auker:] No.
>
> [Appellant's counsel:] Objection. Speculation.
>
> The court: I'll allow it. Overruled.
>
> [Assistant district attorney:] Did you anticipate any answer from [J.R.]?
>
> [Trooper Auker:] I did not, no.

*Id.* at 216-17 (formatting altered). We add that Appellant testified that he fathered a child with D.G. and admitted in a police interview that he was attracted to fifteen-year-old girls. N.T. Trial, 12/12/19, at 198, 206-07.

On appeal, Appellant argues that the intent of the Commonwealth's question was to suggest that J.R.'s denial was motivated by Appellant's presence inside the home but within earshot of Trooper Auker. Appellant's Brief at 32-33. Appellant argues the Commonwealth's question was improper bolstering of J.R.'s testimony and therefore prejudicial.[6] *Id.* at 33-34.

Our standard of review is as follows:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted). In contrast to a reversible error, harmless error "exists where, *inter alia*, the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by

---

[6] The Commonwealth counters that Appellant waived the "improper bolstering" argument because Appellant objected only on the basis of speculation. Commonwealth's Brief at 22. We decline to find waiver, as we construe Appellant's argument as an assertion that the question allegedly calling for a speculative answer was a *de facto* attempt to bolster J.R.'s testimony.

comparison that the error could not have contributed to the verdict." ***Commonwealth v. Hitcho***, 123 A.3d 731, 748 (Pa. 2015) (citation omitted and formatting altered).

Pennsylvania Rule of Evidence 602 states that a lay "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Pa.R.E. 602. For example, in ***Commonwealth v. Travaglia***, 28 A.3d 868 (Pa. 2011), our Supreme Court affirmed a ruling that a witness's testimony as to how a defendant would adjust to prison life was speculative under Rule 602 and therefore inadmissible. ***Travaglia***, 28 A.3d at 875.

Instantly, the assistant district attorney asked Trooper Auker, "[b]ased on the fact that you had to ask [Appellant's] permission to interview her, and you were interviewing her on the front porch possibly within earshot of [Appellant], did you anticipate any answer?" ***See*** N.T. Trial, 12/11/19, at 216-17. To the extent the Commonwealth's question improperly called for Trooper Auker to speculate as to J.R.'s motivation to deny Appellant's abuse, Appellant did not establish that Trooper Auker's response was reversible error given the overwhelming, properly admitted, and uncontradicted evidence of guilt, including Appellant's own testimony. ***See*** N.T. Trial, 12/12/19, at 198, 206-07, 216; ***Hitcho***, 123 A.3d at 748. For these reasons, Appellant is not entitled to relief.

### Sufficiency of Evidence for Rape of a Child Conviction

Appellant's second issue challenges the sufficiency of evidence for his rape of a child conviction. Appellant's Brief at 29. By way of background, J.R. testified that in 2012, she was living in Appellant's home and was in seventh grade when Appellant began abusing her. N.T. Trial, 12/11/19, at 116. In pertinent part, J.R. testified that the sexual abuse became worse over time:

[J.R.:] It progressed to [Appellant] pulling his penis out of his pants and having me actually touch it. And, um, he began to touch me. And he had me put my mouth on his penis. Um, do you want more?

[Assistant district attorney:] We'll start with that.

[J.R.:] Okay.

[Assistant district attorney:] Where did this occur in [Appellant's] house? Was it different locations? Was it one location? Did it change?

[J.R.:] It began in the office, and it would, it progressed to, um, usually in my room or his room.

[Assistant district attorney:]. And when [Appellant] exposed his penis to you[,] you said that he made you touch it?

[J.R.:] Yes.

[Assistant district attorney:]. What did you touch it with?

[J.R.:] My hand and then later my mouth.

*Id.* at 118-19 (formatting altered).[7]

J.R. testified that the abuse occurred over a couple of years and the following exchange occurred:

> [Assistant district attorney:] . . . Now you also said that . . . you would put your mouth on [Appellant's] penis?
>
> [J.R.:] Yes.
>
> [Assistant district attorney:] . . . Where did that happen?
>
> [J.R.:] That would happen in the office or in his room or my room.
>
> [Assistant district attorney:] Would numerous things happen in one incident meaning would [Appellant] touch you with his hands, his mouth and then you would touch him with your mouth all like at one time?
>
> [J.R.:] Yes.

*Id.* at 121-22 (formatting altered).  J.R. testified that the abuse ended when she was in ninth grade but she would still avoid Appellant because he would still "make attempts if [she] got too close" to Appellant.  *Id.* at 122, 162.

On appeal, Appellant argues that the Commonwealth failed to establish the element of penetration required for a conviction of rape of a child. Appellant's Brief at 30.  Appellant asserts that J.R. testified that "his penis did not enter her vagina."  *Id.*  With respect to J.R.'s testimony that Appellant "had [her] put [her] mouth on his penis," and touched Appellant's penis with

_____

[7] J.R. also testified that Appellant's penis touched but did not enter her vagina. N.T. Trial, 12/11/19, at 120.  We add that J.R. testified that her mother worked overnight shifts.  *Id.* at 122.

her mouth, Appellant argues her testimony did not establish penetration. *Id.* at 30-31.

The standard of review for a challenge to the sufficiency of the evidence is well settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citations omitted).

Section 3121(c) states that a "person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). Section 3101 defines "sexual intercourse" as follows: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." *Id.* § 3101.

For example, in *Commonwealth v. McIlvaine*, 560 A.2d 155, 159 (Pa. Super. 1989), *rev'd on other grounds*, 603 A.2d 1021 (Pa. 1992) (*per curiam*

order), the defendant was convicted of involuntary sexual deviant intercourse[8] (IDSI) with the minor victim. *McIlvaine*, 560 A.2d at 156. On appeal, the defendant argued that the victim's testimony that she kissed the defendant's penis was insufficient to establish penetration. The *McIlvaine* Court disagreed, reasoning that the victim's testimony was "sufficiently descriptive to warrant the inference by the jury that [the defendant] penetrated, 'however slight,' the mouth of the victim." *Id.* at 159.

Similarly, in *Commonwealth v. Wilson*, 825 A.2d 710 (Pa. Super. 2003), the defendant argued that the Commonwealth failed to establish penetration for his IDSI conviction. *Wilson*, 825 A.2d at 714. The *Wilson* Court disagreed, holding that the victim's testimony that the defendant "inserted his testicles into her mouth," was oral contact "sufficient to establish penetration however slight."[9] *Id.* (citation omitted).

As set forth above, J.R.'s testimony that she put her mouth on Appellant's penis is similar to the *McIlvaine* victim's testimony that she kissed the defendant's penis. *See McIlvaine*, 560 A.2d at 159; *cf. Wilson*, 825 A.2d at 714. Therefore, to paraphrase the *McIlvaine* Court's reasoning, J.R.'s

_____

[8] 18 Pa.C.S. § 3123. At that time, an element of IDSI required "some penetration however slight." *McIllvaine*, 560 A.2d at 159.

[9] The *Wilson* Court noted that in "order to establish penetration, some oral contact is required. *See Commonwealth v. Trimble*, 419 Pa. Super. 108, 615 A.2d 48 (1992) (finding actual penetration of the vagina is not necessary; some form of oral contact with the genitalia is all that is required)." *Wilson*, 825 A.2d at 714.

testimony that her mouth was on Appellant's penis was "sufficiently descriptive to warrant the inference by the jury that [the defendant] penetrated, 'however slight,' the mouth of the victim." *See McIlvaine*, 560 A.2d at 159; *cf. Wilson*, 825 A.2d at 714 (holding that the victim's oral contact with the defendant's testicles established penetration). For these reasons, after reviewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the Commonwealth established the "penetration however slight" element to sustain a conviction of rape of a child. *See* 18 Pa.C.S. §§ 3101, 3121(c); *Widmer*, 744 A.2d at 751. Appellant is therefore due no relief on this issue.

## Prior Bad Acts Evidence

In support of his third issue, Appellant argues the trial court improperly admitted prior bad acts in violation of Pa.R.E. 404(b), specifically his uncharged offenses against D.G. Appellant's Brief at 23. By way of background, at trial, D.G. testified that in 2007, she was living in Appellant's home and would accompany Appellant, who was a truck driver, in his truck. N.T. Trial, 12/11/19, at 47-48. D.G. testified that Appellant would have sex with her while she was travelling with Appellant, and at Appellant's home in various rooms, including D.G.'s bedroom. *Id.* at 50-51. Appellant requested D.G. to perform oral sex on him, but she refused. *Id.* at 52-53. D.G. became pregnant and gave birth to Appellant's child in 2008. *Id.* at 56.

Similarly, J.R. testified at trial as follows:

[Assistant district attorney:] How often did [Appellant's abuse] occur?

[J.R.:] Um, multiple times a week.

[Assistant district attorney:] And when did this occur?

[J.R.:] Um it would just depend. It would occur during the day or at night. Typically, um, if it was in his room and many things were happening then it was a night.

[Assistant district attorney:] How would you get to his room?

[J.R.:] He would come get me from my room.

N.T. Trial, 12/11/19, at 121-22 (formatting altered).[10]

We add that the trial court specifically charged the jury that D.G.'s testimony was to be considered only for the limited "purpose of tending to show motive, opportunity, intent, or common scheme and plan." N.T. Trial, 12/12/19, at 283. Further, the trial court instructed:

This evidence must not be considered by [the jury] in any way other than for the purposes I just gave you. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies for which you might be inclined

_____

[10] We summarized some of J.R.'s testimony to provide context for Appellant's challenge to the admission of testimony regarding the prior bad acts against D.G.

We add that M.M. also testified that in 2017, when he was in seventh grade, Appellant told M.M. to sit on Appellant's lap, watched pornography, and touched M.M.'s genitalia. N.T. Trial, 12/11/19, at 181-83, 185. Subsequently, at Appellant's request, M.M. either sat on Appellant's lap or laid on top of Appellant several times, during which Appellant touched M.M.'s genitalia. *Id.* at 183-84.

to infer his guilt for the criminal offenses for which he is on trial .
. . .

***Id.***[11]

In this appeal, Appellant argues that the prior bad acts involving D.G. are distinguishable from the offenses against J.R. Appellant's Brief at 26. Appellant highlights that D.G. was twenty-years old at the time of the alleged conduct, and J.R. was between twelve- and fifteen-years old. ***Id.*** at 27. Appellant also emphasizes that the offenses allegedly committed against J.R. are not distinctive or unusual.[12] ***Id.*** at 27-28.

With respect to prior bad acts evidence, Pennsylvania Rule of Evidence 404(b) states as follows:

> *(1) Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

---

[11] Appellant reiterated his objection to D.G.'s testimony at trial, ***see*** N.T. Trial, 12/11/19, at 44, and also requested the limiting instruction. ***See id.*** at 8-9.

[12] We note that Appellant does not discuss his offenses against M.M. or the trial court's limiting instruction. The Commonwealth, in relevant part, countered that because the trial court charged the jury as set forth above, any "potential prejudice from the introduction of [Rule] 404(b) evidence was ameliorated by this instruction." Commonwealth's Brief at 17.

This Court has noted:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.
>
> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. All relevant evidence is admissible, except as otherwise provided by law.
>
> Evidence will not be excluded merely because it is harmful to a defendant's case. The trial court is not required to sanitize the trial to eliminate all unpleasant facts where those facts are relevant to the issues at hand.
>
> Mere similarities between a defendant's prior bad acts and the crimes for which he is being tried will not qualify for a Rule 404(b)(2) exception. Rather, to qualify for an exception to Rule 404(b)(1)'s general prohibition, the prior bad acts must have a close factual nexus sufficient to demonstrate their connective relevance to the crime in question.

*Commonwealth v. Akhmedov*, 216 A.3d 307, 316 (Pa. Super. 2019) (*en banc*) (citations omitted and formatting altered), *appeal denied*, 224 A.3d 364 (Pa. 2020). "Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (citations omitted) (holding trial court's instruction on Pa.R.E. 404(b) evidence minimized likelihood of prejudice). Similarly, "any error in admission

of prior bad acts was cured by the trial court's contemporaneous administration of a cautionary instruction and by its final instruction limiting the jury's consideration of the prior bad acts evidence." *Id.* at 667 (citation omitted).

In *Aikens*, the defendant was convicted of various sexual offenses involving T.S., his fourteen-year old biological daughter, which involved them watching a pornographic movie and the defendant committing indecent assault. *Aikens*, 990 A.2d at 1182. At trial, the Commonwealth called V.B., the defendant's thirty-two-year-old daughter, who testified that when she was fifteen-years old, they watched a pornographic movie and the defendant raped her. *Id.* at 1183. In relevant part, the defendant argued on appeal that V.B.'s testimony was "prohibited prior bad acts evidence."[13] *Id.* at 1184.

The *Aikens* Court reasoned as follows:

> [T]he evidence in question was admissible under the common scheme design or plan exception. [*Commonwealth v. Luktisch*, 680 A.2d 877 (Pa. Super. 1996)] is instructive. In [*Luktisch*], the defendant was convicted of sexually molesting his stepdaughter. At trial, the court had permitted the defendant's biological daughter to testify about sexual abuse that the defendant had perpetrated on her when she was a child, even though that abuse ended nineteen years before trial and began twenty-four years before trial. The defendant claimed that the prior assaults were too remote. We held that the prior incidents were not too distant since there was only a six-year lapse between the previous assaults and the inception of the defendant's abuse of the victim in that case.

_____

[13] The *Aikens* procedural posture is complex, but we need not restate it here.

We held that while remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question. After analyzing the facts relating to the defendant's abuse of his daughter and the victim in question, we concluded in *Luktisch* that the two incidents were factually similar and that the defendant's prior conduct was admissible under the common scheme or plan exception to the prohibition against introduction of prior bad acts.

*Aikens*, 990 A.2d at 1185 (citations and footnote omitted).

The *Aikens* Court concluded:

In the case at bar, we believe that the fact pattern involved in the two incidents was markedly similar. In both cases, the victims were of like ages: T.S. was fourteen years old, and V.B. was fifteen years old. Both victims were [the defendant's] biological daughters. [The defendant] initiated the contact during an overnight visit in his apartment. He began the sexual abuse by showing the girls pornographic movies. The assaults occurred in bed at night. While [the defendant] raped V.B. and indecently assaulted T.S., T.S. stopped [the defendant] from disrobing her and committing the more serious sexual assault. In addition, [the defendant] mimicked the grinding movements of sexual intercourse on T.S. in order to sexually gratify himself. These matching characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern. Hence, we reject [the defendant's] position that we are pigeonholing sexual abuse cases to such an extent that any prior instance of child abuse would be admissible in a subsequent child abuse prosecution.

*Id.* at 1185-86 (citation omitted).

Instantly, as in *Aikens* and *Luktisch*, we conclude that D.G.'s testimony "was admissible under the common scheme[,] design[,] or plan exception." *See* Pa.R.E. 404(b)(1)-(2). Similar to the victims in *Aikens*, D.G. and J.R. were Appellant's biological daughters, although we acknowledge that

- 17 -

D.G. was an adult and J.R. was a minor in the seventh grade when the abuse began. *See Aikens*, 990 A.2d at 1185. Like *Aikens*, however, the assaults against D.G. and J.R. occurred in their respective bedrooms or Appellant's bedroom while other members of the household were either asleep or the house was otherwise unoccupied.[14] *See, e.g.*, N.T. Trial, 12/11/19, at 50-51, 119-22. D.G. and J.R. also had oral contact with Appellant's genitalia. *See, e.g.*, *id.* at 52-53, 121-22. Similar to *Luktisch*, in which factually similar abuse occurred six years apart, instantly, five years separated the 2007 abuse of D.G. and the 2012 abuse of J.R.[15] *See Luktisch*, 680 A.2d at 879. Regardless, even if D.G.'s testimony was improperly admitted, the trial court's jury instruction that it should consider her testimony only to establish a common scheme and not to infer Appellant's guilt cured any resulting prejudice.[16] *See* N.T. Trial, 12/12/19, at 283; *Hairston*, 84 A.3d at 666-67. For these reasons, Appellant's third issue merits no relief.

_____

[14] We acknowledge that Appellant also assaulted D.G. outside of the home, unlike J.R.

[15] As noted above, Appellant did not address the offenses involving M.M.

[16] We acknowledge that Appellant preserved his objection to D.G.'s testimony and also requested the limiting instruction. *See* N.T. Trial, 12/11/19, at 8-9. Because Appellant requested the limiting instruction, he did not challenge it in his post-sentence motion. *See generally Commonwealth v. Bryant*, 855 A.2d 726, 739 (Pa. 2004).

- 18 -

## *De Facto* Life Sentence

Appellant's last issue is that the trial court erred by imposing a *de facto* life sentence of 70 to 140 years' imprisonment for the nineteen counts at issue. In Appellant's view, the trial court improperly focused solely on the gravity of the offenses. Appellant's Brief at 19-20. Appellant, who was fifty-five-years old at the time of sentencing, argues that the trial court ignored other sentencing factors relevant to his "rehabilitative potential," including his health issues. *Id.* at 20-21. He notes that the court's sentence exceeded the Commonwealth's recommended sentence of forty-five to ninety years' imprisonment. *Id.* at 22.

> It is well settled that
>
> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[ ] § 9781(b).

*Commonwealth v. Proctor*, 156 A.3d 261, 273 (Pa. Super. 2017) (some citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or

(2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

Instantly, Appellant has preserved his sentencing issues in a post-sentence motion, a timely appeal, and a Pa.R.Crim.P. 2119(f) statement in his brief. *See id.* Appellant's Rule 2119(f) statement contends that the trial court did not consider mitigating factors or his individualized circumstances and that consecutive sentences resulted in an excessive sentence. *See, e.g.*, Appellant's Brief at 13 (citing *Commonwealth v. Dodge*, 77 A.3d 1263 (Pa. Super. 2013)). To the extent Appellant challenges the trial court's failure to consider mitigating factors or his individualized circumstances, Appellant has raised a substantial question for our review. *See Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011) (stating, "to the extent that [the defendant's] claim impugns the trial court's failure to offer specific reasons for the sentence that comport with the considerations required in section 9721(b) . . . it raises a substantial question"); *Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa. Super. 2008) (holding that a trial court's failure to consider a defendant's individualized circumstances raises a substantial question).

Appellant's consecutive-sentence claim, however, does not raise a substantial question given the nature of his nineteen offenses against his children. *See Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018) (stating that "[w]e consistently have recognized that excessiveness

- 20 -

claims premised on imposition of consecutive sentences do not raise a substantial question for our review." (citations omitted)); **see also id.** at 470 (stating, the "imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the **most extreme circumstances**, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." (emphasis in original and quoting **Commonwealth v. Moury**, 992 A.2d 162, 169 (Pa. Super. 2010)). To the extent Appellant cites **Dodge**, the **Radecki** Court held that "a claim that a sentence is excessive due to its consecutive nature generally does not raise a substantial question for purposes of Section 9781(b) of the Sentencing Code." **Id.** at 469. The **Radecki** Court acknowledged that in **Dodge**, this Court held that the defendant had raised a substantial question because his aggregate sentence was excessive because he "had not committed crimes against a person," unlike the defendant in **Radecki**. **Id.** at 470; **cf. Commonwealth v. Harvard**, 64 A.3d 690, 703 (Pa. Super. 2013) (holding, where Commonwealth conceded the defendant raised a substantial question, that trial court did not abuse its discretion in imposing a de facto life sentence comprised of multiple consecutive sentences).[17] We therefore address only

---

[17] Specifically, the **Harvard** Court stated that the "trial court effectively imposed a life sentence in this case, albeit by imposing consecutive sentences rather than imposing a life sentence for one of the robberies. This distinction is of no moment, as imposition of consecutive rather than concurrent

*(Footnote Continued Next Page)*

Appellant's claim that the trial court failed to consider mitigating factors or individualized circumstances.

Our review of a challenge to the discretionary aspects of a sentence considers whether the trial court has abused its discretion. We observe:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citations omitted and formatting altered).

> Pursuant to 42 Pa.C.S. § 9721(b):
>
> [T]he court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b). "The trial court is required to consider the particular circumstances of the offense and the character of the defendant," including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citations omitted and formatting altered). Although

---

sentences rests within the trial court's discretion." ***Harvard***, 64 A.3d at 703 (citation omitted).

"a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence, the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Commonwealth v. Crump**, 995 A.2d 1280, 1283 (Pa. Super. 2010) (citation omitted and formatting altered).

Further, this Court has held that "where the sentencing judge had the benefit of a [PSI report], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Ventura**, 975 A.2d at 1135 (citation omitted). This Court may only disturb a standard range sentence if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

Based on our review of the record, we discern no abuse of discretion by the trial court. **See Caldwell**, 117 A.3d at 770. The trial court had the benefit of a PSI, **see Ventura**, 975 A.2d at 135, and considered the appropriate sentencing factors and mitigating evidence as stated at the sentencing hearing. **See** N.T. Sentencing Hr'g, 6/3/20, at 31-33, 52-56. Because Appellant failed to demonstrate that his sentence was clearly unreasonable, **see** 42 Pa.C.S. § 9781(c)(2), Appellant is not entitled to relief. For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/12/2021