J-S21023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDER COLON | : | |
| | : | |
| Appellant | : | No. 1056 MDA 2021 |

Appeal from the Judgment of Sentence Entered July 20, 2021,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0000895-2019.

BEFORE:   DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED AUGUST 09, 2022**

Alexander Colon appeals from the judgment of sentence of 24 to 48 years of incarceration imposed following his convictions for attempted murder, two counts of burglary and terroristic threats, and simple assault.[1]  We affirm.

On May 16, 2018, police charged Colon in connection with an incident on May 11, 2018.  The case proceeded to a jury trial in April 2021.  The trial court described the factual and procedural history as follows:

> Williana Andujar ("Andujar") testified that in 2018, she was living with her four children at 747 South Lime Street in Lancaster City.  Andujar identified [Colon] as her former boyfriend and the father of two of her children, and she informed the jury that she and [Colon] had parted company at some time in 2018.  During their relationship, [Colon] repeatedly told Andujar that he would

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a), 3502(a)(1)(i), 2706(a)(1), and 2701(a)(3).

kill her and the person she was with if she ever had another partner.

After breaking off her relationship with [Colon], Andujar began a relationship with Felix Lopez-Bonilla ("Lopez-Bonilla"), who lived next door to Andujar. On the evening of May 11, 2018, Andujar and Lopez-Bonilla were folding laundry at Lopez-Bonilla's house. Andujar then went back to her house to check on the children. While she was upstairs, [Colon] entered her house without her permission, "came up with a blade in his hand[,]" and stated he was going to kill her. Andujar was able to dissuade [Colon] from murdering her by pointing out that their children were present, and if he was going to kill her he would have to kill her in front of the children. [Colon] then went down stairs and to the house next-door, looking for Lopez-Bonilla. Andujar followed but she was unable to warn Lopez-Bonilla in time and [Colon] began "stabbing him all over the place[,]" in "[t]he head, the back, the shoulders." Andujar called the police.

Lopez-Bonilla described the attack and the circumstances leading up to it. On May 11, 2018, he and Andujar were living together at 745 South Lime Street, they were doing laundry at his mother's house at 747 South Lime Street, Andujar returned home to care for her sick child, and he stayed behind to fold the clothes. Suddenly, Lopez-Bonilla heard Andujar say "watch out, watch out," and [Colon] then attacked Lopez-Bonilla from behind. Lopez-Bonilla tried to defend himself but was not able to do so and he fell to the ground. During the attack, [Colon] told Lopez-Bonilla that he was going to kill him. Lopez-Bonilla then heard the voices of his family, who intervened to stop the attack, and [Colon] ran off. While Lopez-Bonilla was in the hospital under treatment for his injuries, [Colon] telephoned Lopez-Bonilla and told him that he was going to continue until he killed Lopez-Bonilla. Lopez-Bonilla testified that [Colon] did not have permission to enter the residence at 747 South Lime Street.

Sergeant Michael Dean ("Dean") of the Lancaster City Bureau of Police ("LCBP") testified that police were dispatched in the early morning hours of May 11, 2018 to adjoining row homes located at 745 and 747 South Lime Street in Lancaster City for a reported stabbing. When Dean arrived he encountered a frantic woman outside who reported that her ex-boyfriend kicked in the door of her home at 745 South Lime Street, he asked where her boyfriend was, the ex-boyfriend then went next door to 747 South Lime Street, at which time he stabbed the victim.

Inside 747 South Lime Street, Dean found Lopez-Bonilla approximately 15 feet inside the residence on his hands and knees, bleeding from multiple stab wounds, moaning and asking for an ambulance. [Lopez-Bonilla's] shirt was covered in blood, there was blood all around him, and there were blood spatters on the wall. Andujar provided officers with the suspect's name. Police then attempted to make contact with the suspect at his residence but they were unable to locate him.

Dr. John C. Lee, who treated Lopez-Bonilla at Lancaster General Hospital, was accepted by the court as an expert in trauma surgery. Dr. Lee testified that Lopez-Bonilla suffered twenty-one stab wounds to his back and side. Dr. Lee further stated that "most of the stab wounds were very deep tissue wounds," and that one of the wounds, "on the right side . . . punctured the lung and caused it to collapse." A tube was inserted into Lopez-Bonilla's chest so the lung could re-expand. Dr. Lee opined that Lopez-Bonilla would have died from his injuries without medical treatment.

Detective Lieutenant Nathan Nickel ("Nickel") of the LCBP testified that he was the lead detective assigned to the case who filed the charges against [Colon]. Nickel obtained phone records showing numerous phone calls from [Colon's] phone to Andujar's phone on May 10, May 11, and May 12, 2018. Nickel further testified that a member of the LCBP obtained [Colon's] cell phone tower records, which showed that [Colon's] phone was connecting to cell towers in Philadelphia and then in Fort Lauderdale, Florida on the evening of May 12, 2018. In the early morning hours of May 13, 2018, [Colon's] phone was connecting to cell phone towers in Puerto Rico. After the charges were filed, Nickel coordinated with the Federal Bureau of Investigation to obtain a warrant for [Colon's] extradition and [Colon] was apprehended in Puerto Rico on December 14, 2018.

On April 21, 2021, the jury found [Colon] guilty on all charges and the court ordered a pre-sentence investigation ("PSI"), to include a mental health evaluation.[fn 2] On July 20, 2021, the court imposed . . . an aggregate sentence of 24 to 48 years [of] incarceration.

---

[2] The aggravated assault charge at count 2 was withdrawn by the Commonwealth during trial.

Trial Court Opinion, 9/30/21, at 1–4 (footnote and record citations omitted).

Colon timely appealed.  Colon and the trial court complied with Pennsylvania

Rule of Appellate Procedure 1925.

Colon presents the following issues on appeal:

1. The [trial c]ourt erred by not giving the charge for Aggravated Assault, Bodily Injury with a Deadly Weapon, felony of the second degree.

2. The [trial c]ourt erred in allowing prior bad acts/threats.  No 404(B) motion was filed by the Commonwealth.

3. The [trial c]ourt erred in ruling that prison telephone calls were admissible.  Such telephone calls were not inculpatory and just prejudicial to [Colon,] painting him in a bad light with no probative value.  This ruling [a]ffected [Colon's] decision to testify and defend himself with [the] only defense available – self defense.

4. The sentence was excessive and beyond any guideline range without sufficient justification.

Colon's Brief at 9.

## 1. Jury Instruction

Colon first claims that the trial court erred by not instructing the jury on

aggravated assault under 18 Pa.C.S.A. § 2702(a)(4).  Colon's Brief at 14–17.

At a charge conference, Colon had requested this instruction as a lesser-

included offense of his charge of attempted murder.  N.T. Trial, 4/20/21, at

269.  After reviewing applicable case law, he withdrew his request.  N.T. Trial,

4/21/21, at 280.  He did not otherwise object to the trial court's instructions.

The trial court and the Commonwealth submit that Colon has waived this claim. Trial Court Opinion, 9/30/21, at 6; Commonwealth's Brief at 8–9. We agree.

A defendant must object to preserve a jury instruction issue for review, after the charge to the jury or at least at a charging conference. **Commonwealth v. Pressley**, 887 A.2d 220, 225 (Pa. 2005); **See Commonwealth v. Green**, 273 A.3d 1080 (Pa. Super. 2022). Colon did not object to the trial court's instructions and withdrew his request. Therefore, he has waived his claim.[2]

## 2. Evidence of Prior Threats

Colon next claims the trial court erred in admitting Ms. Andujar's testimony of Colon's prior threats to her, over his objection:

---

[2] Even if Colon had preserved a challenge to the trial court's failure to instruct on aggravated assault, he would not be entitled to relief. Regarding instructions on lesser-included offenses, we have explained:

> A jury charge on a lesser-included offense is permissible so long as it does not offend the evidence presented, *i.e.,* there is **some disputed evidence concerning an element of the greater charge** or the undisputed evidence is capable of more than one rational inference. If a rational jury, given the record evidence, can find the defendant guilty of the lesser-included offense, the court should instruct the jury on the law of the lesser-included offense.

**Commonwealth v. Houck**, 102 A.3d 443, 451 (Pa. Super. 2014) (citations omitted). Here, Colon asserts that one of the elements of attempted murder was in doubt, but he does not identify any disputed evidence of the greater charge. Thus, he failed to develop his argument, and he would not be entitled to relief.

- 5 -

Q. [Andujar], when you were with the defendant, would he ever tell you if anything would happen if you got another boyfriend?

A. Yes.

Q. And what would he tell you?

A. That if I had another partner, he would kill me and kill the other person I was with.

Q. And how many times would he tell you this?

A. Always.

N.T. Trial, 4/20/21, at 155.[3]

Colon argues that this evidence should not have been admitted because the Commonwealth did not file a notice and because the evidence was not admissible under Pennsylvania Rule of Evidence 404(b). Colon's Brief at 18–25. The Commonwealth responds that the evidence was properly admitted to show Colon's intent and motive, to establish the history of Colon's relationship with Ms. Andujar, and to rebut any defense that Mr. Lopez-Bonilla caused the attack. Commonwealth's Brief at 9–10.

We review a trial court's evidentiary rulings for an abuse of discretion. *Commonwealth v. Lehman*, 275 A.3d 513, 518–19 (Pa. Super. 2022) (citing *Commonwealth v. Travaglia*, 28 A.3d 868, 873–74 (Pa. 2011)). Evidence is generally admissible if it is relevant, meaning "it has any tendency

---

[3] The parties had also contested the admissibility of two specific acts in New York and Puerto Rico, where Colon beat and stabbed Ms. Andujar. N.T. Trial, 4/19/21, at 3–24. No evidence of these incidents was presented at trial. The parties further disputed the significance of a confrontation between Colon and Mr. Lopez-Bonilla earlier in May 2018. *See* N.T. Trial, 4/20/21, at 186–187. Evidence of the earlier confrontation was admitted without objection. *Id.* Here, Colon challenges only the admission of his prior threats to Ms. Andujar.

to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401, 402; *see Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015). Rule 404 excludes certain evidence of a person's character that would be otherwise admissible, providing in relevant part:

> **(a) Character Evidence.**
>
> (1) *Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
>
>         \*      \*      \*
>
> **(b) Other Crimes, Wrongs, or Acts.**
>
> (1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> (3) *Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(a)(1), (b).

As a threshold matter, Rule 404(b) is not implicated by evidence that a defendant had previously stated an intent to commit the crime being tried. *Commonwealth v. LeClair*, 236 A.3d 71, 79–81 (Pa. Super. 2020), *appeal*

*denied*, 244 A.3d 1222 (Pa. 2021). In *LeClair*, the defendant was prosecuted for murdering his wife. *Id.* at 74. On appeal, he argued that Rule 404(b) prohibited evidence of his prior statements that he was going to kill her. *Id.* at 79. We held that the statements showed the defendant's desire to kill his wife and advanced the inference that he did in fact kill her; the statements did not go to show bad character or propensity for committing crimes under Rule 404(b). *Id.* at 80–81.

Likewise, Colon's prior threats to kill Ms. Andujar and her new partner were not prohibited by Rule 404(b). At a minimum, the threats were relevant to demonstrate Colon's intent and motive. Colon's prior statement that he would kill Ms. Andujar and her new partner showed his intent when he stabbed Mr. Lopez-Bonilla. However, as in *LeClair*, the threats did not go to show that Colon had a bad character or a propensity for committing crimes. Therefore, the trial court did not abuse its discretion in admitting Colon's prior threats to Ms. Andujar over Colon's Rule 404(b) objection.[4] Colon's second claim fails.

---

[4] Colon clarified at sidebar that he was not objecting to lack of notice but was objecting to the trial court's balance of probative value and unfair prejudice. N.T., 4/20/21, at 154. Therefore, Colon waived his challenge to lack of notice.

As to the Rule 404(b) balancing test, we have defined unfair prejudice as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of [weighing] the evidence impartially." ***Commonwealth v. Green***, 271 A.3d 393, 402 (Pa. Super. 2021) (quoting ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007)). While Colon asserts that the evidence invited the jury to decide the case on an improper basis, he does not posit what that basis might be. He has therefore failed to demonstrate how the trial court abused its discretion.

### 3. Telephone Call

Third, Colon claims that the trial court abused its discretion in ruling that the contents of a telephone call Colon made from prison would be admissible if Colon testified. Colon's Brief at 25–29. After the first day of trial, Colon was recorded in a telephone call saying, "the rats showed up to snitch on [him]." N.T., 4/20/21, at 180. Colon questioned the relevancy of the phone call, and the Commonwealth proffered that it went to Colon's credibility. *Id.* at 181. The telephone call was never presented to the jury. Nevertheless, Colon argues that the evidentiary ruling induced him not to testify, thereby depriving him of his constitutional right to present a defense. We disagree.

Initially, it does not appear that the trial court ever ruled that the telephone call would be admissible. When the matter was first presented, the trial court invited defense counsel to listen to the recording over lunch and revisit it to relate if there was any objection. *Id.* at 182. Colon did not object to the admissibility of the evidence. Because Colon did not object, he has waived this issue on appeal. Pa.R.E. 103(a)(1).

Further, Colon's claim that the possible use of his telephone call influenced his decision not to testify on his own behalf is belied by the record. The trial court addressed this issue as part of its colloquy of Colon:

> THE COURT [to defense counsel]: Well, as you point out, since you spoke with him yesterday, the Commonwealth has discovered apparently an audio taped conversation your client had with someone outside the prison that they sought to introduce if your client testified.
>
> Is that your understanding?

- 9 -

[Defense counsel]: That is my understanding.

THE COURT: And you conveyed that information to your client?

[Defense counsel]: I did.

THE COURT: And after you did so, is that when he informed you he no longer wished to testify?

[Defense counsel]: That's not when he informed me. After that, he did inform me.

THE COURT: Okay. Mr. Colon, did that -- the fact that there is that recording that may be introduced, was that a factor in your deciding not to testify?

THE INTERPRETER: No. No. No. It was my decision. No.

THE COURT: All right. Very well.

The Court finds this is a knowing, intelligent and voluntary waiver by Mr. Colon of his right to testify.

N.T., 4/20/21, at 266–267.

Therefore, Colon's own testimony disavowed his claim that the court's evidentiary ruling on the admissibility of the telephone call affected his decision not to testify. Colon is not entitled to relief on this issue.

### 4. Sentencing

Finally, Colon claims that his aggregate sentence term of 24 to 48 years of imprisonment is excessive.[5] This is a challenge to the discretionary aspects of his sentence. ***Commonwealth v. Velez***, 273 A.3d 6, 9 (Pa. Super. 2022).

> Challenges to the discretionary aspects of sentence are not appealable as of right. ***Commonwealth v. Leatherby***, 116 A.3d

---

[5] Colon also asserts that the sentence exceeded the applicable sentencing guideline ranges. This assertion is not supported by the record, as the trial court imposed sentences that were within the guidelines at each count.

73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. *Id.* An appellant must satisfy all four requirements. *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013).

*Commonwealth v. Miller*, 275 A.3d 530, 534 (Pa. Super. 2022).

Here, Colon filed a timely notice of appeal and included a Rule 2119(f) statement in his brief. However, he has failed to preserve his challenge by objecting at sentencing or by filing a motion to reconsider and modify his sentence. Therefore, he has not properly invoked this Court's jurisdiction to review his claim. *Commonwealth v. Padilla-Vargas*, 204 A.3d 971, 975–76 (Pa. Super. 2019). We cannot address the merits of this issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/09/2022